OPINION
{¶ 1} Appellant, Edward Franchini, appeals the judgment of the Geauga County Court of Common Pleas overruling his objections to a magistrate's decision and his notice of rescission of a separation agreement entered into between himself and appellee.
 {¶ 2} Appellee filed a complaint for divorce on January 25, 2001. The case was set for a final contested divorce trial on March 13, 2002. The parties and their counsel appeared on March 13, 2002, and commenced negotiations over all issues raised in the pleadings. The court ordered the parties and counsel back on March 14, 2002, because the case had not been settled after a full day of negotiations. On March 14, 2002, a settlement on all issues was reached and the parties entered into a handwritten memorandum to the terms of the agreement. The court then took evidence necessary to grant the divorce.
 {¶ 3} Appellee's counsel agreed to prepare the judgment entry of divorce and shared parenting decree incorporating the terms of the in-court settlement agreement. After appellee submitted the proposed agreed judgment entry, counsel for appellant notified the court of objections to the proposed judgment entry and shared parenting plan on or about April 23, 2002.
 {¶ 4} On June 19, 2002, a magistrate's decision was filed recommending that the court adopt the proposed judgment entry and shared parenting decree, over the objections of appellant. On June 25, 2002, appellant filed an objection to the magistrate's June 19, 2002, decision and a notice of rescission of the settlement agreement.
 {¶ 5} The court overruled the objections to the magistrate's decision and the notice of rescission of the separation agreement on July 25, 2002. The judgment entry of divorce and shared parenting decree were filed by the court on that date. Appellant filed a timely notice of appeal and assigns the following errors for our consideration:
 {¶ 6} "[1.] The trial court erred by failing to hold an evidentiary hearing where there was a factual dispute as to the meaning of the terms of an in-court settlement agreement."
 {¶ 7} "[2.] The court erred in overruling the Defendant-Appellant's Notice of Recission [sic] of Settlement Agreement."
 {¶ 8} A trial court's authority to enforce in-court settlement agreements is discretionary. Perko v. Perko, 11th Dist. Nos. 2001-G-2403, 2002-G-2435, and 2003-G-2436, 2003 Ohio App. 1377, at ¶ 26. As such, the trial court's decision will not be disturbed on appeal unless it is clear that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 9} When parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract.Walther v. Walther (1995), 102 Ohio App.3d 378, 383. The enforceability of an in-court settlement agreement depends upon whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced.Normandy Place Assoc. v. Beyer (1982), 2 Ohio St.3d 102, 105-106.
 {¶ 10} Under his first assignment of error, appellant claims that the trial court erred in adopting a proposed judgment entry over his objections in lieu of holding an evidentiary hearing because there was a factual dispute as to the meaning of the terms of the in-court settlement agreement. In support, appellant cites Mack v. Polson Rubber Co. (1984),14 Ohio St.3d 34, 37, for the proposition that a lower court is bound to conduct an evidentiary hearing when a party alleges a factual dispute concerning the existence or the terms of a settlement agreement. Appellant specifically alleges a factual dispute regarding the meaning of the term QDRO, i.e., a "qualified domestic relations order." Appellant concludes that the trial court's failure to conduct a hearing on this dispute requires a reversal. For the following reasons, we agree.
 {¶ 11} First, the magistrate's decision and the trial judge's subsequent adoption of said decision reflect that appellant failed to file a copy of the trial transcript when he filed his objections. The record indicates that appellant's written objection addressed certain factual nuances surrounding the in-court settlement agreement, viz., the failure to provide survivorship benefits with respect to appellee's STRS account. However, "any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of the evidence if a transcript is not available." Civ.R. 53(E)(3)(b). Generally, the failure to provide such a transcript or affidavit prevents the trial court, and therefore an appellate court, from reviewing the findings of fact.
 {¶ 12} However, under the circumstances, appellant's written objections were sent to both appellee's attorney and the court. Appellee responded to appellant's objections and, moreover, the magistrate addressed appellant's objection in his decision. Furthermore, the magistrate attached the original "Division of Marital Assets" to his decision with a label identifying the document "Court's Exhibit 1." As such, the subject of the objection was available for the trial court's review irrespective of appellant's failure to provide a transcript or affidavit. Although appellant failed to strictly comply with proper procedure, the court was still able to review the document central to appellant's objection. Therefore, rejecting appellee's argument on appellant's failure to provide a transcript or affidavit would, under the circumstances, glorify form over substance.
 {¶ 13} The in-court settlement agreement into which the parties entered states, in pertinent part: "(1) Parties agree to the following as a full settlement and division of marital assets * * *
 {¶ 14} "* * *
 {¶ 15} "d) Edward Franchini to receive (as QDRO) ½ of amount subject to equitable distribution from Louise Franchini's STRS of Ohio earned during coverture of marriage (08/07/87 to 3/13/02). All other portions of said STRS pension/retirement remains property of Louise Franchini."
 {¶ 16} In her April 23, 2002, objection to the judgment entry proffered by appellee's attorney, appellant's attorney indicated that although both parties initially agreed that a QDRO would be prepared to divide the STRS, they discovered that a division of property order would be required. However, a division of property order does not provide for any survivorship benefits. Therefore, she concluded that, insofar as survivorship rights were implied in a QDRO, there was no "meeting of the minds." Appellant claims that there was a factual dispute regarding the meaning of the term QDRO.
 {¶ 17} Whenever a factual dispute exists concerning the meaning of terms of an in-court settlement agreement, the court must hold an evidentiary hearing. See Mack v. Polson Rubber Co. (1984),14 Ohio St.3d 34. As such, appellant contends that the court was bound to conduct an evidentiary hearing to resolve the factual dispute concerning the terms of the in court settlement agreement.
 {¶ 18} We are mindful that, prior to January 1, 2002, public retirement programs, including STRS, were not subject to QDROs.[1] As such, using a QDRO to divide the STRS retirement fund was a legal impossibility. Insofar as both appellant and appellee signed the in-court settlement agreement, it is evident that both parties believed the QDRO could operate to accomplish the division. Such circumstances indicate a mutual mistake of a material fact regarding the division of the STRS account. Thus, because both parties were under the mistaken impression that a QDRO was an appropriate vehicle for division of appellee's STRS account, the trial court should have held a hearing to determine the party's intent once it determined that QDRO was a legal impossibility.
 {¶ 19} During the contested divorce hearing, the magistrate advised the parties, "that STRS would probably not accept" a QDRO and a division of property order (DPO) was likely the appropriate vehicle for dividing the STRS. As such, the "Agreed Judgment Entry" prepared by appellee's attorney states that appellant shall receive, pursuant to a DPO, one-half of the amount of appellant's STRS retirement subject to equitable distribution. Although both parties ostensibly agreed to the change from a QDRO to a DPO, appellant's objection evinces a factual dispute as to whether the initial QDRO and, by implication, the subsequent DPO included survivorship rights. Appellant's objection manifested his intent not to be bound by the terms of the "Agreed Judgment Entry." As such, the court should have held an evidentiary hearing to resolve any factual disputes set forth in appellant's objection. Thus, the court abused its discretion by signing its "journal entry" reflecting a settlement agreement when, in fact, there were material issues of fact left unsettled.
 {¶ 20} Appellant's first assignment of error has merit.
 {¶ 21} In his second assignment of error, appellant maintains the trial court erred in overruling his notice of rescission of the settlement agreement. In particular, appellant claims that the rescission was not simply a unilateral cancellation, but a protest of being bound to an agreement based upon a mutual mistake. We agree.
 {¶ 22} The in-court settlement agreement is facially clear that the parties mutually agreed that appellant would receive one half of the STRS pension, a marital asset, by a QDRO. However, as the preceding analysis indicates, a QDRO was not viable for this purpose. Because both parties signed the in-court agreement, each was mistaken as to the power and scope of the QDRO regarding the STRS pension. A mistake is material to an agreement when it is, "a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances." Reilley v. Richards (1994), 69 Ohio St.3d 352, 353. Here, both parties erroneously believed they could accomplish the division of the STRS pension with a QDRO. Such is a mutual mistake of material fact.
 {¶ 23} Moreover, the "Agreed Judgment Entry" materially changed the distributive vehicle from a QDRO to a DPO. Although appellant acceded to this change, he objected to the extent that it did not explicitly allow for survivorship rights. Under these circumstances, we hold that the trial court abused its discretion to the extent that it overruled appellant's motion to rescind where there was evidence of a factual dispute regarding the meaning and scope of the initial QDRO and the subsequent DPO. Consequently, appellant's second assignment of error also has merit.
 {¶ 24} We must note that we are not mandating the trial court to accept appellant's argument regarding an implied right of survivorship in a QDRO or a DPO. By reversing and remanding this matter, we are simply holding that the trial court must conduct a hearing to determine what each party believed these terms to include and whether the terms' legal denotations support such beliefs.
 {¶ 25} Therefore, for the foregoing reasons, appellant's assignments of error have merit and the decision of the Geauga County Court of Common Pleas, Domestic Relations Division, adopting the magistrate's ruling is reversed and the matter remanded for proceedings consistent with this opinion.
DONALD R. FORD, P.J., and JUDITH A. CHRISTLEY. J., concur.
[1] Effective January 1, 2002, public retirement programs were made subject to QDROs. See R.C. 3105.81 and 3307.371. However, R.C. 3307.371
applies prospectively only to those divorce cases filed after its effective date as there is no language in the statute to support the conclusion that the General Assembly intended R.C. 3307.371 to apply retroactively. Weller v. Weller, 11th Dist. No. 2001-G-2370, 2002 Ohio 7125, ¶ 29. In the current matter, the complaint for divorce was filed on January 25, 2001. Therefore, on this date, the terms and conditions of the STRS did not recognize a QDRO to divide the retirement fund at the time the complaint for divorce was filed.