[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Walsh v. Walsh,* Slip Opinion No. 2019-Ohio-3723.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3723

WALSH, APPELLANT, *v.* WALSH, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Walsh v. Walsh,* Slip Opinion No. 2019-Ohio-3723.]

*Divorce—R.C. 3105.171(I)—Property division in final decree of divorce is not modifiable unless both spouses consent—Military retirement benefits— Uniformed Services Former Spouses' Protection Act, 10 U.S.C. 1408—A trial court does not have jurisdiction under Civ.R. 60(B) to modify a division of property in a final decree of divorce when both spouses have not consented to the modification.*

(No. 2018-1073—Submitted July 9, 2019—Decided September 18, 2019.)

APPEAL from the Court of Appeals for Trumbull County,

No. 2017-T-0033, 2018-Ohio-2466.

_____

**DEWINE, J.**

{¶ 1} An Ohio statute, R.C. 3105.171(I), provides that a property division made in a final decree of divorce is not modifiable "except upon the express written

consent or agreement to the modification by both spouses." In the case before us, the domestic-relations court granted relief from judgment under Civ.R. 60(B) to modify a decree that divided pension benefits even though both parties had not agreed to the modification. We conclude that the trial court lacked authority to modify the decree. Because the court of appeals below held otherwise, we reverse its judgment.

## I. BACKGROUND

### A. The terms of the divorce decree

{¶ 2} Todd and Sandra Walsh married in August 1994 and separated six years later. More than 13 years after they separated, Todd filed for divorce. The pair worked out an agreement, which they memorialized in a consent judgment of divorce.

{¶ 3} Todd had served in the Navy for 20 years and as a consequence was entitled to a military pension. The judgment provided that Sandra would receive a share of the pension based upon a marriage term of six years—a period that represented the time that the parties were together during Todd's military service.[1]

{¶ 4} To implement the pension division, the judgment specified that a consulting firm would prepare a Qualified Domestic Relations Order ("QDRO")[2] and submit it to the court for approval within 45 days of the entry of the decree. (A QDRO is a court order that "implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution." *Wilson v. Wilson,* 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 7.) The judgment further provided that the court would retain jurisdiction over the QDRO.

---

1. A court in a divorce action may set the marriage duration as something other than "the period of time from the date of the marriage through the date of the final hearing," R.C. 3105.171(A)(2)(a), if using the actual marriage dates "would be inequitable," R.C. 3105.171(A)(2)(b).
2. The type of court order required in this case is more precisely called a qualifying military court order due to certain differences that distinguish it from a typical QDRO. Because the consent judgment, the parties, and the lower courts refer to the order broadly as a QDRO, we will continue to use that term here.

**{¶ 5}** The consent judgment was adopted by the court as a final decree of divorce. Problems arose postdecree when the consultant set about drafting the QDRO. After reading the decree, the consultant determined that it was not possible to draft a QDRO under which the military would make direct pension payments to Sandra. There were two main issues: (1) the decree did not specify Sandra's share of the pension in percentage terms and (2) because the decree said the parties were married for six years, it did not satisfy the military's requirements that the marriage last for at least ten years and that the service member be providing military service during that time (the "10/10 rule").

**{¶ 6}** Both requirements are set forth in the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. 1408. The act allows state courts to divide military retirement pay in accordance with state law. *See* 10 U.S.C. 1408(c)(1); *Mackey v. Mackey*, 95 Ohio St.3d 396, 2002-Ohio-2429, 768 N.E.2d 644, ¶ 9. The act also authorizes a direct distribution of a portion of a member's retirement benefits to a former spouse as specified by court order, if certain requirements are met. *See* 10 U.S.C. 1408(d).

**{¶ 7}** For a court-ordered property award to be recognized under the act, the divorce decree must state the specific amount of the member's pension that is to be paid as a division of marital property—expressed either in dollars or as a percentage of the disposable retirement pay. *See* 10 U.S.C. 1408(a)(2)(C); 10 U.S.C. 1408(d)(1). The judgment in this case did neither.

**{¶ 8}** Additionally, the military will not issue direct payments to a former spouse unless the marriage satisfies the 10/10 rule, codified at 10 U.S.C. 1408(d)(2). That rule provides that the military will make pension payments directly to a former spouse if the marriage lasted for at least ten years and the member spouse provided at least ten years of military service during that time. *See id.* This limitation does not, however, prevent a trial court from ordering a member to personally pay a former spouse a portion of the monthly retirement payments

received by the member if the marriage lasted less than ten years. "The ten-year rule only affects the former spouse's ability to obtain direct payment [from the military] of her court-awarded share of the member's military retired pay on a monthly basis." Gilbert, *A Family Law Practitioner's Road Map to the Uniformed Services Former Spouses Protection Act*, 32 Santa Clara L.Rev. 61, 69 (1992).

### B. Proceedings in the domestic-relations court

{¶ 9} In order to qualify for direct payment from the military, Sandra filed a motion for relief from judgment under Civ.R. 60(B)(4) and (5). In the motion, which was filed about two years after the entry of the decree, Sandra asked that the court modify the decree to list the percentage of Todd's pension to which she was entitled and to state "the parties' actual date of marriage and date of divorce, rather than the agreed upon dates which do not meet the 10/10 rule." Todd opposed the motion on the grounds that Sandra could not satisfy the requirements of Civ.R. 60(B).

{¶ 10} An evidentiary hearing was held before a magistrate at which a QDRO consultant was called to testify. The consultant used the "coverture fraction" method to calculate the percentage of the monthly retirement payments to which Sandra would be entitled. Under that method, benefits are divided based on " 'the ratio of the number of years of [the] employed spouse's employment during the marriage to the total number of years of his or her employment.' " *Daniel v. Daniel*, 139 Ohio St.3d 275, 2014-Ohio-1161, 11 N.E.3d 1119, ¶ 15, quoting *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 183, 559 N.E.2d 1292 (1990). Because Todd and Sandra had agreed that the marital term would be from the date of marriage to the date of separation, the portion of the pension earned during that six years would be considered marital property. Thus, the consultant determined that Sandra would be entitled to half of the amount reached by dividing the six years of marriage by Todd's 20 years of service—15 percent.

**{¶ 11}** The consultant explained that because the six-year marriage term did not meet the ten-year requirement, the military would not make pension payments directly to Sandra. The court could order Todd to make monthly payments to Sandra, but if the court wanted the military to pay Sandra directly, the divorce decree would have to state that the marriage had lasted for at least ten years. The magistrate questioned the consultant regarding whether such a change would amount to a modification of the divorce judgment:

> THE COURT: Well, you don't have to say that it's 10 years, do you? You could leave in the judgment entry that the marriage is from August 10th, 1994 through August 7th, 2000, but say that she's entitled to 15 percent of his pension, right?
>
> A: They will bounce it if they think that the duration of the marriage is less than 10 years. They won't accept it. They'll see the 1994, 2000. Our experience is they will return it saying it does not meet the 10-year rule.
>
> THE COURT: Okay. Then in order to make this judgment entry meet the 10-year rule, wouldn't we have to change the judgment entry, which in effect, changes their agreement?
>
> A: Right. If they do not want, if he does not want direct payments, you're going to have to change it, yes. That would be my understanding, Your Honor.

(Capitalization sic.)

**{¶ 12}** The magistrate nevertheless granted Sandra's Civ.R. 60(B) motion and made two alterations to the divorce decree: the marriage term was changed to be August 10, 1994, through August 10, 2004, and Sandra was to receive 15 percent of Todd's retirement pay per month. The trial court approved the magistrate's

decision. Todd appealed to the Eleventh District, contending that the trial court lacked authority to modify the decree under Civ.R. 60(B).

## C. The proceedings on appeal

{¶ 13} The Eleventh District affirmed in a split decision in which one judge concurred in judgment only without writing and one judge dissented. The lead opinion concluded that because the trial court had retained jurisdiction over the QDRO, it could modify the terms of the divorce decree with respect to the pension. 2018-Ohio-2466, ¶ 12, 15. And although the lead opinion noted that a trial court does not have continuing jurisdiction to modify a property division in a divorce decree in a situation such as this, it determined that the court may nevertheless " 'clarify and construe' " the property division in order to carry out its judgment. *Id*. at ¶ 14, quoting *Gordon v. Gordon*, 144 Ohio App.3d 21, 24, 759 N.E.2d 431 (8th Dist.2001). Because the changes to the decree were made with the goal of carrying out the original intent of the parties, the lead opinion concluded that they amounted to a clarification rather than a modification.

{¶ 14} The dissenting judge protested that it was improper to establish a "fictional termination of marriage date" for the purpose of circumventing federal law. *Id.* at ¶ 21 (Grendell, J., dissenting). She contended that the trial court's decision to extend the duration of the marriage through August 10, 2004, could potentially increase the share of the retirement funds to which Sandra is entitled as marital property. *Id.* at ¶ 22. Moreover, the dissenter suggested that the trial court need not have gone to all this trouble because if Todd does not comply with the original terms of the decree, Sandra "can turn to the court to enforce its judgment." *Id.* at ¶ 23.

{¶ 15} We accepted Todd's discretionary appeal. He asserts that Sandra voluntarily agreed to the language in the decree and cannot now obtain relief under Civ.R. 60(B) simply because the agreed-upon marriage term turned out to be unfavorable. He also maintains that the trial court did not retain jurisdiction to

6

modify the decree, but insists that should he "fail[] to obey the order to pay the appropriate portion of his retirement" to Sandra, she may seek enforcement of the order in the trial court.

{¶ 16} We hold that the trial court lacked jurisdiction to modify the length of the marriage stated in the divorce decree.

## II. ANALYSIS

{¶ 17} Sandra asked for and received relief under Civ.R. 60(B)(4) and (5) in the trial court. The lead opinion of the court of appeals reasoned that "Civ.R. 60(B) jurisprudence is not applicable," but upheld the trial court's judgment based on the trial court's retention of jurisdiction over the QDRO. 2018-Ohio-2466, at ¶ 12, 15.

{¶ 18} The lead opinion was wrong to disregard our Civ.R. (60)(B) jurisprudence. Civ.R. 60(B) is the only procedural vehicle that exists for modifying a final judgment in a civil case. Thus, even when a court retains continuing jurisdiction to modify a provision in a decree, a party must still meet the requirements of Civ.R. 60(B) before a court may exercise that authority. *See, e.g.*, *In re Whitman*, 81 Ohio St. 3d 239, 242, 690 N.E.2d 535 (1998).

## A.  R.C. 3105.171(I) precludes a court from modifying a property division absent consent of both former spouses

{¶ 19} In addition to the Civ.R. 60(B) requirements for modification, the divorce and dissolution statutes contain certain statutory restrictions that limit the authority of a trial court to modify a final decree. *See, e.g.*, R.C. 3105.171(I); R.C. 3105.18(E); R.C. 3105.63(A) and (C). Retirement benefits earned during the course of a marriage constitute marital property. R.C. 3105.171(A)(3)(a)(i); *see Hoyt*, 53 Ohio St.3d at 178, 559 N.E.2d 1292. With respect to a modification of a property division, R.C. 3105.171(I) provides: "A division or disbursement of property or a distributive award made under this section is not subject to future

modification by the court *except upon the express written consent or agreement to the modification by both spouses*." (Emphasis added.)

**{¶ 20}** The change to the decree ordered by the domestic-relations court is best understood as a modification to a property division. The provisions of the decree at issue divided the pension by specifying the dates of the marriage. By changing the marriage length, the trial court modified the terms of the divorce decree with respect to a division of property. The parties did not both consent to that modification to the property division, so by the plain language of R.C. 3105.171(I), the court had no authority to order the change.

**{¶ 21}** We have examined the interplay between Civ.R. 60(B) and the statutory provisions that relate to modification in a number of cases, most recently in *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664. Before us in that case was a certified question that asked whether a trial court could use Civ.R. 60(B) to modify an award of spousal support in a decree of divorce or dissolution when the decree did not contain a reservation of jurisdiction. *Id.* at ¶ 1. A statute, R.C. 3105.18(E), precludes modification of a spousal-support award absent a reservation of jurisdiction. We held that a trial court does not have jurisdiction under Civ.R. 60(B) to modify a spousal-support award unless the decree complies with the statutory requirement that it contain a reservation of jurisdiction. *Id.* at ¶ 2.

**{¶ 22}** In reaching our decision in *Morris*, we explained that Civ.R. 60(B) is a procedural rule, while the statutory provision limiting modification of the decree is a rule of substantive law. Under the Ohio Constitution, a procedural rule " 'cannot abridge, enlarge, or modify any substantive right' " created by statute. *Morris* at ¶ 30, quoting Ohio Constitution, Article IV, Section 5(B). Thus, we held that Civ.R. 60(B) could not be used to circumvent the statutory restriction on the modification of a decree. *Morris* at ¶ 32.

**{¶ 23}** Though *Morris* dealt with spousal support, rather than a property distribution, the same principle applies: Civ.R. 60(B) cannot be used to alter the statutory requirements for the modification of a decree. Because R.C. 3105.171(I) does not permit modification absent the consent of both parties, Civ.R. 60(B) cannot provide a workaround.

**{¶ 24}** In concluding otherwise, the lead opinion below relied heavily on the language of the Eighth District in *Gordon*, 144 Ohio App.3d 21, 759 N.E.2d 431. That case dealt with a trial court's authority to clarify an ambiguity in the original order. *Id.* at 25. There is some question whether the analysis in *Gordon* can be reconciled with the plain language of R.C. 3105.171(I), but we need not resolve that question here—there was nothing ambiguous about the six-year marriage term provided for in the Walshes' divorce decree. Under the plain language of R.C. 3105.171(I), the trial court lacked authority to modify that six-year term.

**B. Even aside from the R.C. 3105.171(I) prohibition, the trial court lacked authority to modify the decree**

**{¶ 25}** The lead opinion below never examined R.C. 3105.171(I)'s limitation on postdecree modifications to property divisions. It seemed to view the trial court's decision not as modifying the property division but as simply "effectuat[ing] [the] original intent of the parties" that Sandra receive 15 percent of Todd's pension. 2018-Ohio-2446 at ¶ 15. And it concluded that the trial court's retention of jurisdiction over the QDRO could serve as a basis to allow the court to change the decree to accomplish this perceived intent. There are a number of problems with this analysis.

**{¶ 26}** First, as explained above, we think it evident that the trial court's order was a modification to a division of property and thus was required to comply with R.C. 3105.171(I). While it is true that the end result of the court's action was to leave Sandra with the same percentage of Todd's pension that the parties

originally envisioned, this was accomplished only by modifying the terms of the decree that constituted the property division. So R.C. 3105.171(I) applies.

{¶ 27} But even if we were to accept the premise that the modification ordered by the court was not a modification of the property division but of some other part of the decree, the domestic-relations court still lacked authority to order the modification. The QDRO and the divorce decree are two separate court orders, and the trial court retained jurisdiction over the QDRO, not the divorce decree. Nothing in the provision that gave the court continuing jurisdiction over the QDRO authorized it to alter the final decree of divorce.

{¶ 28} Further, Sandra sought relief under Civ.R. 60(B)(4), which authorizes relief when "it is no longer equitable that the judgment should have prospective application," and Civ.R. 60(B)(5)'s catchall provision, regarding "any other reason justifying relief from the judgment." Our caselaw makes clear that even when a decree reserves jurisdiction for the court to modify the parties' agreement, a court may not grant relief under Civ.R. 60(B)(4) or (5); rather it is limited to granting relief under Civ.R. 60(B)(1), (2), and (3)—all of which require the motion to be filed within one year from the date of the judgment. *See Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, at ¶ 2; *Whitman*, 81 Ohio St.3d at 245, 690 N.E.2d 535.[3] We have explained that a contrary rule would "relieve a litigant from the consequences of his voluntary, deliberate choice" to enter into an agreement. *Knapp v. Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 1353 (1986), paragraph two of the syllabus; *see Morris* at ¶ 38-41. Further, allowing

---

3. In *Whitman*, we held that a court, pursuant to Civ.R. 60(B)(1), (2), and (3), could make postdecree modifications to a property division when the parties had incorporated a provision in the decree allowing for future modifications by court order. *Whitman* was decided prior to the amendment of R.C. 3105.171(I) in 2010 by Am.Sub.H.B. No. 238 that added its current final phrase regarding "express written consent or agreement *to the modification* by both spouses." (Emphasis added.) Because the issue is not before us, we express no opinion today as to whether a reservation of jurisdiction would be a sufficient basis to allow a court to modify a property division via Civ.R. 60(B)(1), (2), or (3) under the current statutory scheme.

such motions would be "antithetical to our principle of the finality of judgments," *id.* at ¶ 59, and encourage mischief by allowing those with the resources to do so "to bury their ex-spouses in a mountain of filings," *id.* at ¶ 60. Thus, even if we were to conclude that R.C. 3105.171(I) did not apply, the trial court still lacked authority to modify the divorce decree.

### III. CONCLUSION

{¶ 29} The trial court lacked the authority to modify the divorce decree to change the term of the marriage. We therefore reverse the judgment of the court of appeals and remand this cause to the trial court for proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY and DONNELLY, JJ., concur.

FRENCH, FISCHER, and STEWART, JJ., concur in judgment only.

_____

Mark Lavelle, for appellant.

Thomas A. Will, for appellee.

_____