[Cite as *Sites v. Sites*, 2023-Ohio-1278.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

LISA SITES,                          :

    Plaintiff-Appellee,          :     Case No.  22CA2

    v.                           :

PAUL SITES,                          :     DECISION & JUDGMENT ENTRY


    Defendant-Appellant.         :

_____

APPEARANCES:

Brigham M. Anderson, Ironton, Ohio, for Appellant.

Robert C. Delawder, Ironton, Ohio, for Appellee.
_____
CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:4-12-23
ABELE, J.

{¶1}  This is an appeal from a Lawrence County Common Pleas Court judgment that overruled a Civ.R. 60(B) motion to vacate a dissolution decree.  Paul Sites, defendant below and appellant herein, assigns three errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED WHEN IT DETERMINED THAT A MISTAKE OR EXCUSABLE NEGLECT WAS NOT MADE WHEN ATTORNEY LAMBERT INFORMED APPELLANT THAT APPELLEE WAS ENTITLED TO HALF OF APPELLANT'S FULL MILITARY RETIREMENT PURSUANT TO CIV.R. 60(B)(1)."
>
> SECOND ASSIGNMENT OF ERROR:

> "THE TRIAL COURT ABUSED ITS DISCRETION AND
> ERRED WHEN IT DETERMINED THAT THERE WAS NO
> FRAUD OR MISREPRESENTATION BY ATTORNEY
> LAMBERT WHEN HE INFORMED APPELLANT THAT
> APPELLEE WAS ENTITLED TO HALF OF HIS
> MILITARY RETIREMENT PURSUANT TO CIV.R.
> 60(B)(5)."

THIRD ASSIGNMENT OF ERROR:

> "THE TRIAL COURT ABUSED ITS DISCRETION AND
> ERRED WHEN IT DID NOT HOLD AN EVIDENTIARY
> HEARING TO DETERMINE THE PARTY'S INTENT ONCE
> IT DETERMINED THAT QDRO WAS A LEGAL
> IMPOSSIBILITY TO APPELLANT'S MILITARY
> RETIREMENT."

**{¶2}** On November 2, 2002, the parties married for the third time. On July 30, 2020 the parties filed their petition for dissolution and separation agreement that, inter alia, addressed appellant's military retirement:

> The wife will receive a monthly sum of $1445.00 per month from military retirement benefits. This shall begin August 2, [2]020 payable on or before the 10th of each month. A Qualified Domestic Relations Order (QDRO) will issue. The husband will pay the benefits directly to the wife until the month they are withheld from his retirement.
>
> Each party will receive and maintain all rights to any other retirement benefits, annuities, 401K or similar benefits or work-related benefits he/she has at the time of this Agreement except as may be otherwise set forth herein.

**{¶3}** At the parties' September 25, 2020 hearing, appellee appeared with counsel and appellant appeared pro se. When asked

LAWRENCE, 22CA2

if he wished to retain counsel, appellant stated, "Um, there's some things in the paperwork that's not agreed upon now." When asked, "[o]therwise the separation agreement provides that Lisa would receive $1,445.00 from your month[ly] from your military retirement benefits, correct Mr. Sites," appellant replied, "Yes." Appellant also agreed monthly payments would begin August 2, 2020, and he agreed with appellee's attorney's summation that "[t]here will be no spousal support, as the wife is receiving her vehicle paid for with marital money, a property settlement, and retirement benefits." In addition, appellant agreed that the separation agreement appears to be fair and equitable and he wanted the trial court to adopt the agreement. Consequently, the court approved the separation agreement and granted the parties a dissolution of marriage.

{¶4} On December 2, 2020, appellant filed a Civ.R. 60(B)(1),(3) and (5) motion to vacate the trial court's September 25, 2020 judgment. In support of his motion, appellant argued that the judgment is based either on mistake or excusable neglect because, appellant alleged, appellee's counsel incorrectly informed appellant that appellee is entitled to one-half of appellant's full (1989 to 2011) military retirement benefit. Appellant contends that, even though his military retirement benefit began to accrue in 1989, appellee should only

be entitled to one-half the value of the retirement benefit from the date of their 2002 marriage to his 2011 retirement, not the date that he began military service.

{¶5} At the hearing to consider the Civ.R. 60(B) motion, several witnesses testified. Appellee testified that (1) the parties first married from 1992 to 1994, again from 1995 to 1998, and their third and final marriage began November 2002 and ended September 2020, and (2) appellee waived all spousal support because the parties agreed that appellee would receive one-half of appellant's military retirement benefit. Further, appellee agreed not to pursue any division of appellant's teacher's pension because he had only taught for the past 10 or 11 years - "I just felt like that's what we were together through was the military career. We made an agreement that I would take care of the kids and everything, he would do his military career."

{¶6} Appellee's trial counsel also testified at the hearing and recalled appellant's statement in a July office meeting that he would be "willing to give her $2,500 a month for five years. Then if she remarried it would go to half or at the end of five years it would go to half. And then she indicated she was willing to accept that if it did not decrease during the lifetime." Counsel testified that appellant did not wish to pay

spousal support, but regarding appellant's military retirement benefit:

> I don't think there was ever a discussion that she was entitled to half of that. That was more of a way of coming up with her, giving her the money that he had actually originally said he was willing to give her. The easiest way to do that was to give her money out of his retirement and then that way we didn't get into spousal support issues, uh made it easier for her to get her money every month, and I think even he agreed that that way he didn't have the money, it would come out of retirement, and then he didn't have to worry about it.

Appellee's counsel testified that he told the parties that "any retirement accumulated during the marriage she would be entitled to one half," that he also believed appellee would be entitled to spousal support based on the inequities in the parties' incomes, and the parties' agreed upon amount constituted their agreement irrespective of various retirement funds. Counsel also testified that on at least two occasions, he changed the agreement at appellant's direction. Once, appellant came to counsel's office with proposed changes that counsel recommended to appellee she reject, but appellee nevertheless accepted those changes. Appellant also wanted the $2,500 monthly payments to be reduced by half if appellee remarried "because he knew she would be remarried." Counsel further testified that appellant did not express or indicate any confusion about the agreement's terms and, although two months elapsed between the agreement's

LAWRENCE, 22CA2

execution and the final hearing, appellant did not indicate he wanted to change any of the agreement's terms.  At the hearing, appellee's counsel also read appellant's text message to appellee that states "we will split the savings and checking, you get $2500.00 a month for three years and then it goes to $1445.00 a month for [rest] of life, I pay insurance, I survivor's benefits."

{¶7}  Appellant acknowledged that he agreed to the terms of the separation agreement, but maintained that his agreement stemmed from his misunderstanding of "the law" and that he subsequently learned that he had been "mislead [sic.]." Appellant testified that he and appellee married three separate times, most recently in November 2002, and he twice met with appellee's counsel and, when asked if he understood that counsel represented only appellee, he replied, "Yes and no."  In the original separation agreement, appellant agreed to pay $1,000 per month for three years if appellee babysat appellant's grandson three days per week, but appellant also wanted the agreement to continue only until appellee remarried.  However, when the attorney said, "she wants three years of this money no matter what," appellant asked, "what's the minimum I have to give her on my retirement because I said this is, that's not what we agreed upon."  Appellant further stated that appellee's

LAWRENCE, 22CA2

counsel told him appellee is entitled to 50% of his retirement, "no matter what," that the $1,445 is exactly half his military retirement, that he began military service in April 1989 and retired in November 2011, but the marital portion of his retirement should only accrue from 2002 to 2011. Also, appellant contacted an accounting service and learned that under the military formula appellee would not be entitled to one-half of his entire retirement benefit, but instead only the marital portion. Appellant stated that (1) he told appellee he would give her $1,000 per month until she either remarried or quit babysitting their grandson, which they estimated to be three years, and (2) he did not understand the difference between a spousal support award or a property award. Appellant further testified that he receives $2,800 per month for his service-connected disability, $2,880 per month from his military retirement, and $2,180 every two weeks from his $76,000 annual salary for his current teaching position. Appellant also confirmed that (1) the dissolution proceedings did not consider his potential retirement from his current teaching position, (2) he agreed to pay $1,000 per month for 36 months as a property division, and (3) if appellant sold the real estate, he would pay appellee $10,000 plus any balance due on the 36 payments of $1,000.

LAWRENCE, 22CA2

**{¶8}** On April 6, 2021, after consideration of the evidence adduced at the hearing, the magistrate recommended the trial court deny appellant's motion for relief from judgment. The magistrate pointed out that at the dissolution hearing the trial court:

> engaged in extended dialogue with Mr. Sites concerning his right to seek his own counsel and that the Court would grant a continuance if he wished to do that. Further, there was extended discussion concerning the agreement and the fact that he was in agreement with those terms. Mr. Sites had suggested changes to the Separation Agreement on several occasions, and most recently had requested and received a change to the Separation Agreement at the time of the hearing.

The magistrate further determined that (1) appellant confirmed to the court he agreed "with all terms of the final draft of the Separation Agreement," (2) appellee's attorney testified that he told appellant that appellee "would be entitled to one-half of the marital portion of the military retirement," and (3) appellant arrived at "a number" he was willing to pay, and "it was easier to use the one military retirement account rather than moving funds from two or three accounts" to achieve the desired and agreed upon goal. Also, despite the parties' 18-year marriage, and the fact that appellant earned significantly more than appellee, no spousal support had been awarded nor any division of appellant's 11-year teacher's

LAWRENCE, 22CA2

retirement fund. Additionally, R.C. 3105.171 limits any modification of a property division award to circumstances in which both parties consent to the modification and, in this instance, both parties did not consent. The magistrate further observed that a mistake does not encompass an error in judgment or remorse and that Civ.R. 60(B)(5) should be used sparingly and "generally reserved to vacate a judgment upon extraordinary and unusual circumstances," and neither of those circumstances exist in the present case.

{¶9} Appellant objected to the magistrate's decision but, after review, the trial court overruled the objections because the court had engaged in "extended dialogue" with appellant concerning his right to seek counsel and offered to continue the matter if he wished to consult counsel. Further, "there was an extended discussion concerning the agreement and the fact that he was in agreement with those terms," that appellant suggested changes to the agreement on several occasions, and even during the hearing he requested, and received, a change to the agreement. The court noted that appellee's attorney testified he told appellant

> Mrs. Sites would be entitled to one-half of the marital
> portion of the military retirement. Mr. Lambert further
> testified that Mr. Sites had arrived at 'a number' that
> he was willing to pay. Mr. Lambert testified it was
> easier to use the one military retirement account rather

than moving funds from two or three accounts in achieving the total desired.

The trial court further observed that, despite the parties' 18-year marriage and the fact that appellant earned "significantly more" than appellee during their marriage, the agreement did not provide any spousal support or division of appellant's teacher's retirement fund. Consequently, the trial court denied appellant's motion for relief from judgment. This appeal followed.

I.

**{¶10}** In his first assignment of error, appellant asserts that the trial court erred when it denied his request for Civ.R. 60(B)(1) relief. In particular, appellant argues that a mistake occurred when, he contends, appellee's attorney incorrectly informed appellant that appellee would be entitled to one-half of appellant's full military retirement benefit, rather than one-half of the marital portion of the benefit.

**{¶11}** Under Civ.R. 60(B), a trial court may relieve a party from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new

trial under Rule 59(B);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(5) any other reason justifying relief from the judgment.

**{¶12}** To prevail on a motion under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds in Civ.R. 60(B)(1)-(5), and (3) the motion is made within a reasonable time. *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150, 351 N.E.2d 113 (1976). A court must overrule the motion if the moving party fails to establish any of these requirements. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988).

**{¶13}** "Civ.R. 60(B) is a mechanism whereby a party or parties may obtain relief by motion from a judgment or order." *In re Whitman*, 81 Ohio St.3d 239, 242, 690 N.E.2d 535 (1998). The Rule strikes a balance between the finality of judgments and a perfect result "by vesting the courts with broad, but not

LAWRENCE, 22CA2

unlimited authority to set aside judgments." *Knapp v. Knapp*, 24 Ohio St.3d 141, 145, 493 N.E.2d 1353 (1986); *Oulette v. Oulette,* 2020-Ohio-705, 152 N.E.3d 528, ¶ 10 (6th Dist.).

{¶14} An appellate court's standard of review of a trial court's Civ.R. 60(B) decision is generally the abuse of discretion standard. *Elliot v. Smead Mfg. Co.,* 4th Dist. Hocking Nos. 08CA13 & 08AP13, 2009-Ohio-3754, ¶ 7, *State ex rel. Richard v. Seidner*, 76 Ohio St.3d 149, 151, 666 N.E.2d 1134 (1996), *Rose Chevrolet,* 36 Ohio St.3d at 20. The term "abuse of discretion" implies that a court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶15} The dispute in the case sub judice involves the division of marital property. We recognize that R.C. 3105.171 provides:

> (I) A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses.

Recently, in *Walsh v. Walsh,* 157 Ohio St.3d 322, 2019-Ohio-3723, 136 N.E.3d 460, the Supreme Court of Ohio addressed the

LAWRENCE, 22CA2

relationship between R.C. 3105.171(I) and Civ.R. 60(B).  In *Walsh,* a former spouse requested relief from judgment and sought to modify the portion of the divorce decree that divided the other spouse's military pension benefits.  The trial court granted the motion and the court of appeals affirmed, but the Supreme Court of Ohio reversed and held that the trial court lacked the authority to modify the decree.  *Id.* at ¶ 1. Although the court cited the military's 10/10 rule (10 U.S.C. 1408(d)(2) - military will issue pension payments directly to former spouse if marriage existed for at least ten years and member spouse provided at least ten years of military service), the court pointed out this rule does not prevent an order to a military service member to personally pay a former spouse a portion of the member's monthly retirement payments if the marriage lasted less than ten years.  *Id.* at ¶ 8, citing Gilbert, *A Family Law Practitioner's Road Map to the Uniformed Services Former Spouses Protection Act*, 32 Santa Clara L.Rev. 61, 69 (1992).  Citing Civ.R. 60(B)'s requirements to modify a final judgment, the court also pointed out that the divorce and dissolution statutes contain restrictions that limit a court's authority to modify a final decree.  *Id.* at ¶ 19, citing R.C. 3105.171(I), R.C. 3105.18(E), R.C. 3105.63(A) and (C). *Id.* at ¶ 27.  The *Walsh* court, citing *Morris v. Morris*, 148 Ohio St.3d

138, 2016-Ohio-5002, 69 N.E.3d 664, held that parties cannot use Civ.R. 60(B) to circumvent statutory restrictions on the modification of a decree. *Id.* at ¶ 22. In the case sub judice, we again point out that the trial court emphasized that appellee did not consent to any modification of the parties' final decree.

{¶16} Moreover, under Civ.R. 60(B) "[m]istake," refers to the mistakes of a party or a party's agent. *Doyle v. St. Clair,* 9th Dist. Lorain No. 16CA010967, 2017-Ohio-5477, ¶ 14. Typically, courts grant relief based on mistake when the mistake is a mutual mistake, shared by both parties, regarding a material fact. *Quezada v. Vizcaino*, 8th Dist. Cuyahoga No. 111124, 2022-Ohio-2683, ¶ 12, citing *Smith v. Smith*, 8th Dist. Cuyahoga No. 83275, 2004-Ohio-5589, ¶ 17. Ohio courts have held that "relief from [a divorce] decree will not be granted when the 'alleged' mistake was merely a unilateral mistake on the part of one party or her counsel." In *Irwin v. Irwin*, 11th Dist. Lake No. 95-L-102, 1996 WL 586762 (Sept. 27, 1996), the parties agreed to divide their "defined benefit plan," but later disputed the meaning of the term "defined benefit plan." The Ninth District determined that wife and her counsel had been "fully aware of the existence of the profit sharing plans when the settlement agreement [which was incorporated into the

LAWRENCE, 22CA2

divorce decree] was negotiated." *Id.* Concluding that wife

failed to "ensure that the [divorce] agreement was consistent

with her intent," the court held that appellant's carelessness

caused the mistake, and, because the mistake was unilateral,

wife should not be entitled to Civ.R. 60(B)(1) relief.

**{¶17}** The Tenth District also recently addressed Civ.R.

60(B)(1) with respect to pro se litigants:

> " '[c]ourts should not generally use Civ.R. 60(B)(1) to
> relieve pro se litigants who are careless or unfamiliar
> with the legal system.' " *Gamble Hartshorn, LLC v. Lee*,
> 10th Dist. No. 17AP-35, 108 N.E.3d 728, 2018-Ohio-980,
> ¶ 26, quoting *Dayton Power & Light v. Holdren*, 4th Dist.
> No. 07CA21, 2008-Ohio-5121, ¶ 12. We have also noted "
> '[a] party who is informed of court action against him
> and fails to seek legal assistance does so at his risk
> and such conduct cannot be said to constitute "excusable
> neglect" under Civ.R. 60(B)(1) or (5) unless a
> compelling reason is presented, like a serious illness.'
> " *Gamble Hartshorn, LLC* at ¶ 29, quoting *Yuhanick v.
> Cooper*, 7th Dist. No. 96-CO-45, 1998 WL 811355, 1998
> Ohio App. LEXIS 5527 (Nov. 16, 1998).

*Myers v. Ohio Department of Rehabilitation and Correction*, 10th
Dist. Franklin No. 21AP-106, 2022-Ohio-1412, ¶ 25.

**{¶18}** In the case sub judice, appellant argues that he,

acting pro se, relied on appellee's attorney's representation

that, according to his testimony, included incorrect

information. However, our review of the record leads us to

conclude that, at most, appellant's alleged reliance either

constitutes a unilateral mistake, or, more likely, not a mistake

at all. Appellant maintained at the hearing that dividing his military retirement benefit formed a portion of the parties' goal to achieve a fair and equitable division of their property and, as part of that plan, the parties agreed to use appellant's military retirement proceeds to provide funds to achieve that specific monthly dollar amount that appellant agreed to pay appellee. Importantly, neither party contemplated that an equal division of the military retirement benefit should constitute a 50 percent division of all income, assets and retirement benefit funds, but rather to serve merely as a conduit to help to provide funds for the parties' total agreed amount.

{¶19} Appellant argues that in *Quesinberry v. Quesinberry*, 2022-Ohio-635, 185 N.E.3d 1163 (2d Dist.), former wife filed a motion for relief from judgment and alleged that the parties had no meeting of the minds. Husband reported $149,000 in income, wife reported no income, their agreement awarded wife $85,000 from husband's retirement account, but provided no spousal support. Later, wife filed a Civ.R. 60(B) motion to vacate the decree and argued that husband failed to disclose marital assets. The trial court refused to vacate the dissolution decree and noted that during the hearing, wife acknowledged she read, understood and was satisfied with the agreement's terms. *Id.* at ¶ 13. On appeal, the court concluded that the agreement

LAWRENCE, 22CA2

was the product of a mutual mistake about the availability of child support and spousal support and, absent any reason to question her husband's veracity, wife should not be accountable for her failure to consult with an attorney. *Id.* at ¶ 43.

**{¶20}** Appellant contends that like *Quesinberry*, a mistake occurred in the case at bar. Appellee points out, however, that unlike *Quesinberry's* intentional misrepresentations, the case at bar does not involve an allegation that one party intentionally misled the other. Here, although we recognize that the evidence conflicts, appellant alleges that appellee's trial counsel provided inaccurate information regarding the division of retirement benefits.[1] Although we recognize that *Quesinberry* attempted to distinguish *Walsh* and pointed out that their case "did not involve an attempt to use Civ.R. 60(B) to vacate an entire divorce or dissolution decree," the entire decree is "subject to being vacated" under Civ.R. 60(B)(1) when the parties' mutual mistake regarding wife's entitlement to spousal and child support "means that there was no meeting of the minds and no valid contract on which to base the dissolution decree." *Id.* at ¶ 44.

---

[1]Appellee also observes that during oral argument, appellant, for the first time, sought to set aside the entire separation agreement. However, that is not the nature of the relief appellant sought in the trial court.

{¶21} Although we concede that the events in the case at bar are somewhat difficult to decipher, what is clear is that the parties began their negotiations with a certain monthly payment in mind and their consideration of the military retirement benefit merely served as a component part to help to facilitate the makeup of their agreed upon total monthly payment. Furthermore, we point out that the trial court informed appellant that he could obtain a continuance to seek the advice of counsel, but he declined to do so. The court also asked appellant if he understood the agreement and if he agreed to its terms, and he affirmatively stated he did. Also, when the court asked appellant if he believed the separation agreement (an agreement as the trial court pointed out, failed to include any provision for spousal support even in light of the parties' 18-year marriage and disparity of income) to be fair and equitable and if he wanted the court to approve the agreement, appellant answered affirmatively. The appellee also points out that, at the parties' first meeting, appellant himself informed appellee's counsel of the parties' agreement and asked counsel to prepare the paperwork. Further, appellant dictated to counsel the amount of money he wanted to pay to appellee each month, rather than engage in a specific, detailed discussion about appellant's various retirement benefits or any other

LAWRENCE, 22CA2

sources of income. Moreover, appellant had ample opportunity to review the parties' agreement and we recognize that he sought, and received, several modifications to the agreement. Also, after appellant notified the court that the military would not withhold money from his retirement benefit for appellee, the parties discussed other direct payment methods to appellee and the creation of a bank account in order to limit any future contact with each other. Obviously, the fact that the military would not withhold money for appellee's benefit was known, and fully discussed, prior to the issuance of the final decree.

{¶22} After our review in the case sub judice, we agree with the trial court's conclusion that appellant's actions more accurately represent a change of heart rather than a mutual mistake, or a mistake at all. As the trial court emphasized, a review of the hearing transcript reveals that appellant knew the military would not withhold funds. Further, the parties did not intend to apply a mechanical formula to arrive at a property division, but instead agreed on a number that each party accepted. As the trial court stated, "mistake does not encompass an error in judgment or remorse subsequent to the execution and acceptance of the agreement by the Court." Consequently, we conclude that the trial court's determination in this matter does not constitute an abuse of the court's

LAWRENCE, 22CA2

discretion.

**{¶23}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II.

**{¶24}** In his second assignment of error, appellant asserts that the trial court abused its discretion when it determined that appellee's trial counsel committed no fraud or misrepresentation. Civ.R. 60(B)(5), known as the "catch all" provision, provides that a trial court may relieve a party from a final judgment, order, or proceeding for any other reason justifying relief from the judgment. A party is entitled to relief from judgment under the "catchall" provision if he or she can demonstrate any other reason not listed in Civ.R. 60(B)(1)-(4) justifies relief. Civ.R. 60(B)(5). However, parties may not use this provision as a substitute for other more specific provisions of Civ.R. 60(B)(1)-(4). *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 66, 448 N.E.2d 1365 (1983).

**{¶25}** Appellant argues that in *Dunford v. Dunford*, 4th Dist. Gallia No. 13CA7, 2014-Ohio-617, the parties, married 30 years, entered into a separation agreement when husband had the benefit of counsel, but wife did not. Although the dissolution decree did not reserve jurisdiction to modify the spousal support

LAWRENCE, 22CA2

award, five years later wife moved to modify the support provisions and claimed that when she signed the agreement, her husband knew she experienced "extreme emotional problems and mental difficulties," and she should have received an award of permanent alimony. The trial court denied the motion, but on appeal wife argued she should receive Civ.R. 60(B)(5) relief because she established fraud. This court noted that, in light of wife's father's testimony that wife had a seventh-grade education, suffered from comprehension problems, and undisputed testimony that husband's former attorney threatened wife with jail if she refused to sign the dissolution papers, wife arguably established a meritorious claim or defense under Civ.R. 60(B)(5). In the end, however, because wife did not file her motion within a reasonable time, this court affirmed the trial court's judgment. *Id.* at ¶ 21.

{¶26} After our review, we do not believe a significant parallel exists between *Dunford* and the facts in the case at bar. In *Dunford*, the petitioner, with a seventh-grade education and cognitive issues, also received threats of jail from husband's attorney if she did not agree to and sign the documents. In the case at bar, however, we find no evidence concerning appellant's lack of education, cognitive difficulties, or evidence of threats or fraud. Although

appellant argues that appellee's attorney told him appellee is entitled to one-half his retirement funds, as more thoroughly discussed under appellant's first assignment of error the fact remains that appellant proposed a suitable and agreed upon monthly payment amount and appellant's military retirement benefit formed a component part to assist the parties to achieve their total monthly payment goal.

**{¶27}** Appellant also contends that *Borzy v. Borzy*, 9th Dist. Medina No. 3185-M, 2001-Ohio-1871 establishes that trial courts have the authority to clarify and construe an original property division provision to effectuate its judgment under R.C. 3105.171: "Where there is confusion over the interpretation to be given to a particular clause, the trial court * * * has the power to hear the matter, clarify the confusion, and resolve the dispute." Here, appellant argues that the appellant's military retirement provision is "extremely ambiguous" because it does not break down the distribution of appellant's retirement payments to appellee as to how it arrived at $1,445 per month. However, we once again point out that the evidence adduced at the motion hearing, as the trial court aptly noted, reveals that appellant fully participated, and even dictated, specific terms of the separation agreement. Appellant asked for, and received, several modifications, then he ultimately signed the agreement

and testified in open court that he understood and agreed with the agreement's terms, even though he understood at that time that the military would not withhold any amount of his military pension for the appellee's benefit. Here, the evidence shows that appellant sought agreement to the total amount to which he now complains, and that appellee's attorney drafted the agreement to arrive at the monthly payment that appellant sought. Consequently, after our review we agree with the trial court's conclusion to deny the Civ.R. 60(B)(5) request to vacate the judgment. The facts in this case do not constitute "extraordinary and unusual circumstances."

**{¶28}** Accordingly, because we conclude that the trial court did not abuse its discretion when it denied appellant's motion, we overrule appellant's second assignment of error.

### III.

**{¶29}** In his final assignment of error, appellant asserts that the trial court abused its discretion when it did not hold an evidentiary hearing to determine the parties' intent after the parties and the court became aware that a QDRO is a legal impossibility for appellant's military retirement. In the case at bar, the parties' separation agreement provides "A Qualified Domestic Relations Order (QDRO) will issue," but during the final hearing appellant informed the court that he learned the

LAWRENCE, 22CA2

military would not implement a QDRO under their specific circumstances. Nevertheless, appellant agreed to proceed with the final hearing and obtain a dissolution of marriage.

{¶30} Appellant argues that in *Franchini v. Franchini*, 11th Dist. Geauga No. 2002-G-2467, 2003-Ohio-6233, although the court initially ordered a QDRO, the parties later discovered that instead a division of property order (DPO) would be required. The court concluded that the trial court should have conducted an evidentiary hearing to resolve factual disputes outlined in appellant's objection and the trial court's approval of signing an entry to reflect a settlement agreement when it appeared that material issues of fact remained unsettled constitutes an abuse of discretion. *Id.* at ¶ 19. Appellee points out, however, that *Franchini* involved a mutual mistake, whereas in the case sub judice although the separation agreement called for a QDRO, both parties knew at the time a QDRO was impossible and, in fact, at the final hearing appellant so informed the court. At that point, the parties discussed on the record the fact that the military would not honor a QDRO under their specific circumstances and further discussed alternative payment methods. Moreover, the parties discussed the creation of a separate bank account to help to facilitate the monthly payments.

{¶31} We believe that *Walsh, supra,* 157 Ohio St.3d 322,

LAWRENCE, 22CA2

2019-Ohio-3723, citing *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, is applicable here and restates that Civ.R. 60(B) is not available to circumvent the statutory restriction to modify a decree. *Id.* at ¶ 22. The court wrote:

> a contrary rule would 'relieve a litigant from the consequences of his voluntary, deliberate choice' to enter into an agreement. *Knapp v. Knapp,* 24 Ohio St.3d 141, 493 N.E.2d 1353 (1986), paragraph two of the syllabus; *see Morris* at ¶ 38-41. Further, allowing such motions would be 'antithetical to our principle of the finality of judgments,' *id.* at ¶ 59, and encourage mischief by allowing those with the resources to do so 'to bury their ex-spouses in a mountain of filings,' *id.* at ¶ 60. Thus, even if we were to conclude that R.C. 3105.171(I) did not apply, the trial court still lacked authority to modify the divorce decree.

*Walsh* at ¶ 28.

{¶32} A Civ.R. 60(B) motion for relief from judgment is not a substitute for a direct appeal. *Kolick & Kondzer v. Baumanis*, 8th Dist. Cuyahoga No. 93679, 2010-Ohio-2354, ¶ 23. Thus, we conclude that the trial court did not abuse its discretion when it did not conduct an evidentiary hearing to consider this particular issue in light of the fact that at the dissolution hearing the parties fully discussed and resolved the issue.

{¶33} Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment.

                                        JUDGMENT AFFIRMED.

LAWRENCE, 22CA2

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry these judgments into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.