[Cite as *State v. Adams*, 2024-Ohio-376.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO,                    :
                                  :      Case No. 22CA1158
    Plaintiff-Appellee,       :
                                  :
v.                                :      <u>DECISION AND JUDGMENT</u>
                                  :      <u>ENTRY</u>
JAMES ADAMS, JR.,                 :
                                  :
    Defendant-Appellant.      :      **RELEASED: 01/24/2024**

<u>APPEARANCES:</u>

Brian T. Goldberg, Cincinnati, Ohio, for Appellant.

Aaron Haslam, Adams County Prosecuting Attorney, and Austin Ervin, Assistant Adams County Prosecuting Attorney, West Union, Ohio for Appellee.

Wilkin, J.

**{¶1}** This is an appeal from an Adams County Court of Common Pleas judgment entry that convicted appellant, James Adams, Jr. ("Adams"), of fifth-degree felony possession of drugs in violation of R.C. 2925.11(A). On appeal Adams maintains that the trial court erred when it denied his motion to suppress, permitted the state to amend the indictment because it changed the essential element of the offense, and his conviction for possession of drugs was against the manifest weight of the evidence.

**{¶2}** After reviewing the parties' arguments, the record, and the applicable law, we find that the court did not err in denying Adam's motion to suppress or abuse its discretion in permitting the state to amend the indictment. We further hold that Adams' conviction for possession of drugs was not against the manifest

weight of the evidence. Therefore, we affirm the trial court's judgment entry of conviction.

BACKGROUND

{¶3} On November 9, 2018, Ohio State Highway Patrol Trooper Samie Wedmore testified that she was dispatched to investigate a single-vehicle crash involving a motorcycle, and the operator of the vehicle was Adams. Prior to her arrival at the scene, Wedmore was advised by dispatch that Adams was not injured but he was showing signs of impairment according to the EMTs and the Adams County Sheriff's Department. Wedmore spoke to Adams who described the vehicle that he had been driving as a "mini dirt bike" and that he had been using a flashlight as a headlight, which is why he crashed.

{¶4} Wedmore described Adams as being "restless," his "pupils were dilated[,]" and he had a "dry mouth," which were signs of possible impairment. Wedmore asked Adams if he had consumed any illegal drugs. Adams admitted that two days prior to the accident he had used illegal drugs.

{¶5} Wedmore decided to have Adams take several field-sobriety tests. She stated that field-sobriety tests can help determine if a person is impaired because it divides the suspect's attention making it more difficult for them to successfully complete the tests. However, upon learning that Adams suffered an injury in the crash, Wedmore did not have him take the walk-and-turn test or the one-leg-stand test. Thus, the only field sobriety test that she administered to Adams was the horizontal gaze nystagmus test ("HGN test").

{¶6} Wedmore stated that the HGN test, which looks for an "involuntary jerking of the eyes[,]" may indicate the suspect is impaired.  It can show impairment if the person has consumed alcohol, but only shows impairment with "certain drugs" "or depressants."  After administering the HGN test to Adams, Wedmore did not see any clues of impairment.

{¶7} Wedmore also decided to have Adams take two "ARIDE" tests, including the lack-of-convergence test and the modified Romberg test.  She administered the lack-of-convergence test, which similar to the HGN test may show impairment for only certain drugs.  A lack of convergence of a suspect's eyes is a sign of impairment.  Wedmore testified that based on her training and experience, marijuana use would show lack of convergence of the eyes, while opiates would not.  Wedmore did not observe any lack of convergence in Adams' eyes.

{¶8} Finally, Wedmore administered the modified Romberg test, which required Adams to close his eyes, tilt back his head, and hold that position for 30 seconds.  Wedmore observed involuntary tremors in Adams' legs, which was a sign of impairment.  Wedmore did not believe that Adams' injury affected the results of the modified Romberg test.

{¶9} Wedmore testified that based on her experience and training under the totality of the circumstances, she believed that Adams was under the influence of a controlled substance that night.  Consequently, Wedmore arrested Adams.  During a search incident to the arrest, Wedmore discovered a brown

plastic bag that contained a white powder in the pocket of Adams' pants. Based on her training and experience, Wedmore believed that the powder was heroin.

{¶10} On June 26, 2019, a grand jury charged Adams with possession of a controlled substance (acetyl fentanyl/fentanyl) in violation of R.C. 2925.11(A), a fifth-degree felony, and operating a vehicle while under the influence of drugs or alcohol, or both, in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor ("OVI").

{¶11} On August 27, 2021, Adams filed a motion to suppress evidence or in the alternative for an order in limine prohibiting admission of the evidence obtained by law enforcement at the scene, as well as the observations and opinions of the law enforcement officers present at the scene, including the results of the field sobriety tests administered by Wedmore. On September 8, 2021, the state filed a memorandum contra to Adams' motion to suppress. On September 21, 2021, the court held a suppression hearing. Subsequently, the court issued a judgment entry denying Adams' motion to suppress.

{¶12} On September 8, 2022, Adams' trial began. The state presented several witnesses. Trooper Wedmore testified that based on the totality of the circumstances she believed that Adams was intoxicated and arrested Adams for OVI, and confiscated a substance from Adams that she believed was illegal drugs. Heather Sheskey, supervisor of the Ohio State Highway Patrol crime lab ("OSP lab"), testified that the substance confiscated from Adams contained fentanyl, a schedule 2 controlled substance, which is an illegal drug unless taken under the direction of a doctor.

{¶13} The state then moved the trial court to amend count one of the indictment to dismiss the allegation that Adams possessed acetyl fentanyl, which would mean that Adams would be charged with possessing only fentanyl. Over appellant's objection, the trial court granted the motion dismissing acetyl fentanyl from the indictment.

{¶14} In his defense, Adams called one witness, the Adams County Sheriff's Deputy Walters, who is dispatched to the scene of the accident. He stated that the investigation was taken over by the Ohio Highway Patrol when he arrived. Walters testified that "typically when he arrives at a scene and [he's] dealing with a suspect, it is very common to do a weapons pat[-down search.]". However, Walters testified that he did not recall searching Adams.

{¶15} The jury found Adams guilty of possessing fentanyl, but not guilty of OVI. It is this judgment that Adams appeals.

ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS FINDING THAT THERE WAS PROBABLE CAUSE TO ARREST APPELLANT FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF DRUGS OR ALCOHOL.

II.   THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE OF OHIO TO AMEND THE INDICTMENT DURING TRIAL WHEN SUCH AMENDMENT CHANGED AN ESSENTIAL ELEMENT OF THE OFFENSE.

III.  THE CONVICTION FOR POSSESSION OF DRUGS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

I. First Assignment of Error

{¶16} Adams asserts that the evidence presented at the motion to suppress hearing did not establish probable cause for Wedmore to arrest appellant for OVI. Adams alleges that neither the results from the various field sobriety tests, nor Wedmore's observations were sufficient to constitute probable cause that he was operating a vehicle under the influence of drugs or alcohol. Adams claims his use of a flashlight as a headlight for his motorcycle was the cause of his crash.

{¶17} In response, the state asserts that based upon the totality of the circumstances, Wedmore had probable cause to arrest Adams for operating a vehicle under the influence of drugs or alcohol.

{¶18} Wedmore did not administer the walk-and-turn and one-leg field sobriety tests because Adams told Wedmore that he had a leg injury, which could invalidate the results. The state also acknowledges that the results of the HGN test did not indicate impairment, but noted the HGN test is more focused on determining impairment from alcohol. Finally, the state admits that Wedmore observed no lack of convergence but further indicated this was normal because the convergence test is best at detecting impairment from marijuana.

{¶19} However, the state maintains that the results of the modified Romberg test should be afforded extra weight and indicated that Adams was impaired. Further, Wedmore's observations that Adams was talkative, restless, had a dry mouth, and had dilated pupils were all signs of impairment. Additionally, Adams admitted to using heroin two days prior to the accident,

which would indicate that Adams was "an active drug user."  Finally, the state

maintains that the single-vehicle accident itself could be a sign of impairment.

Under the totality of these circumstances, the state alleges that Wedmore had

probable cause to arrest Adams for OVI.

**{¶20}** Thus, the state maintains that the trial court did not err in denying

Adams's motion to suppress.

A. Law

1. Standard of Review

**{¶21}** This court's "review of a trial court's denial of a motion to suppress

presents a 'mixed question of law and fact.' "  *State v. Pine*, 2023-Ohio-2191, 219

N.E.3d 423, ¶ 23 (4th Dist.), quoting *State v. Burnside*, 100 Ohio St.3d 152,

2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  "At a suppression hearing, the trial court

acts as the trier of fact and is in the best position to resolve factual questions and

evaluate witness credibility."  *State v. Sheets*, 4th Dist. Jackson No. 21CA6,

2023-Ohio-2591, ¶ 45, citing *State v. Leonard*, 2017-Ohio-1541, 89 N.E.3d 58, ¶

15 (4th Dist.).  "Accordingly, we defer to the trial court's findings of fact if they are

supported by competent, credible evidence."  *State v. Jones*, 4th Dist.

Washington No. 11CA13, 2012-Ohio-1523, ¶ 6, citing *State v. Landrum*, 137

Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist. 2000).  "However, '[a]ccepting

those facts as true, we must independently determine whether the trial court

reached the correct legal conclusion in analyzing the facts of the case.' "  *Sheets*

at ¶ 45 quoting *State v. Gurley*, 2015-Ohio-5361, 54 N.E.3d 768, ¶ 16 (4th Dist.),

citing *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100.

### 2. Probable Cause

**{¶22}** "A law enforcement officer possesses probable cause to arrest an individual for [OVI] when the totality of the circumstances gives rise to a reasonable belief that the individual drove while under the influence of alcohol [or drugs]." *State v. Richards*, 4th Dist. Athens No. 14CA1, 2015-Ohio-669, ¶ 26, citing *State v. Schmitt,* 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 8. Law enforcement officers can utilize "field sobriety tests [to] evaluate one's coordination and movements so as to indicate whether one's actions, reactions, conduct, movement or mental processes are impaired to an appreciable degree so as to demonstrate if one is 'under the influence' to a degree to impair one's ability to drive a motor vehicle." *State v. Littleton*, 5th Dist. Fairfield No. 01CA30, 2002-Ohio-2521, *2. Standard field sobriety tests include the HGN test, the walk-and-turn test, and the one-legged-stand test. *See State v. Rasheed*, 6th Dist. Lucas No. L-21-1065, 2021-Ohio-4509, ¶ 10.

**{¶23}** Law enforcement officers may also administer "advanced roadside impaired driving enforcement ("ARIDE") tests." *Id.* at ¶ 12. The "ARIDE" tests, which are "useful for detecting drivers impaired by drugs[,]" include the lack of convergence and modified Romberg tests. Weiler, Weiler, and Katter, *Baldwin's Ohio Handbook Series Ohio Driving Under the Influence Law*, Section 7:20 (2022). However,

> [p]robable cause to arrest may exist in the absence of field sobriety tests results if there is evidence "that the defendant

caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking."

*State v. Martin*, 5th Dist. Fairfield No. 2023 CA 00008, 2023-Ohio-2739, ¶ 9, quoting *State v. Judy,* 5th Dist. Delaware No. 2007-CAC-120069, 2008-Ohio-4520, ¶ 27, citing *Oregon v. Szakovits,* 32 Ohio St.2d 271, 291 N.E.2d 742 (1972).

Being "talkative" has also been recognized as an indicia of impairment. *See Rockhill v. City of Dayton*, 2d Dist. Montgomery No. 1076, 1931 WL 2750, * 1. *See also State v. Campbell*, 9th Dist. Medina No. 18CA0005-M, 2019-Ohio-583, ¶13. ("[T]alking fast" has been recognized as a sign of possible impairment.) A single-vehicle accident with other observable indicia of impairment may also support probable cause of OVI. *See e.g. State v. Richards*, 2016-Ohio-3518, 67 N.E.3d 147, ¶ 30 (1st Dist.) (The court of appeals found that the defendant's "single-car accident at 2:30 a.m.; red and watery eyes; odor of alcohol; slow and deliberate speech; prior OVI; admission to consuming alcohol; and performance on the field-sobriety tests" supported that he was "under the influence.").

### B. Analysis

**{¶24}** Trooper Wedmore testified that she had been trained on how to administer field sobriety tests, which can assist in determining a driver's impairment. She also received additional training to recognize drug impairment. Wedmore testified that prior to Adams' incident, she had been the investigating officer for 75 to 80 OVI cases. Consequently, we find Wedmore had the training and experience to investigate Adams' case.

{¶25} While the HGN and convergence tests did not give any indications that Adams was impaired, Wedmore testified that the HGN test is not typically used to determine impairment from drugs, and the convergence test is primarily helpful in determining only marijuana use.

{¶26} However, the modified Romberg test conducted on Adams demonstrated leg tremors, which can be indicative of impairment. Further, Wedmore observed that Adams was "very restless, um, very talkative. His mouth was dry, pupils were dilated. Um, these are all signs of impairment based on my training and experience." Wedmore testified that Adams' pupils "had little to no reaction[,]" to her flashlight, which is another sign of impairment. Adams was involved in a single-vehicle accident while purportedly attempting to use a flashlight instead of a headlight. Finally, the emergency medical technicians and sheriff's deputy who responded to the accident suspected that Adams was impaired.

{¶27} Based on our independent review of the evidence, we find that under the totality of the aforementioned circumstances, Trooper Wedmore had probable cause to arrest Adams for operating a vehicle while under the influence of drugs or alcohol. Therefore, we find that the trial court did not err in denying Adams' motion to suppress. Accordingly, we overrule Adams' first assignment of error.

## II. Second Assignment of Error

{¶28} In his second assignment of error, Adams maintains that when a single count of the indictment alleges two separate offenses, it is improper to

allow an amendment of the indictment when the amendment changes an essential element of the offense.  Adams claims that count one of the indictment charged him with possessing acetyl fentanyl/fentanyl, i.e., two different substances.  The trial court permitted the state to amend the indictment by removing the acetyl fentanyl charge and proceeding solely on the fentanyl charge.  Adams alleges that removal of acetyl fentanyl from the indictment violated Crim.R. 7, which allows an amendment to an indictment provided it does not change the name or identity of the crime.

{¶29} Adams cites *State v. Headley*, 6 Ohio St.3d 475, 453 N.E.2d 716 (1983) in support of his argument.  Adams claims that in *Headley* the Court found that in an indictment charging a drug offense, the name of the controlled substance is an essential element of the offense.  Adams claims the dismissal of acetyl fentanyl from the indictment changed the essential element of the drug possession offense alleged against him.  Therefore, Adams claims that the amendment was "unlawful and prejudicial" to him.

{¶30} In response, the state maintains that *Headley* is distinguishable because it determined that the "omission" of the type of controlled substance from the indictment cannot be cured by an amendment because it would change the very identity of the offense charged.  In the case at hand, the indictment charged Adams with possession of acetyl fentanyl and fentanyl, only fentanyl was a controlled substance at that time.  Therefore, the state maintains that dismissing acetyl fentanyl from the indictment "did not alter in any form the essential element under *Headley*."  In other words, dismissing acetyl fentanyl

from the indictment did not change the essential element of Adams' offense, which was possession of fentanyl.

{¶31} Accordingly, the state claims that we should overrule Adams' second assignment of error.

A. Law

{¶32} We review a trial court's decision to amend an indictment for an abuse of discretion. *State v. Hannah*, 4th Dist. Highland No. 16CA17 2017-Ohio-1239, ¶ 16. "The term 'abuse of discretion' implies that a court's attitude is unreasonable, arbitrary or unconscionable." *Sites v. Sites*, 2023-Ohio-1278, 215 N.E.3d 573, ¶ 14 (4th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶33} " 'The primary purpose of an indictment is to inform a defendant of the offense with which he is charged to enable his preparation for trial.' " *State v. Butler*, 4th Dist. Lawrence No. 10CA36, 2011-Ohio-1652, ¶ 8, quoting *State v. Evans,* 4th Dist. Scioto No. 08CA3268, 2010-Ohio-2554, ¶ 19. In part, Crim R. 7(D) states: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged[.]"

{¶34} In *Headley*, the state charged the defendant with one count of aggravated trafficking in violation of R.C. 2925.03(A)(8), but failed to name any controlled substance that he purportedly possessed. *Headley*, 6 Ohio St.3d at

475, 453 N.E.2d 716. The defendant moved to dismiss the indictment on the grounds that it failed to allege an essential element of the crime. *Id.* The trial court denied the defendant's motion and permitted the state to amend the indictment by adding the word "to-wit-cocaine." *Id.* The court of appeals reversed finding "that the indictment was defective due to the failure to name the controlled substance involved." *Id.* at 476.

{¶35} On appeal, the Supreme Court found Section 10 of Article I of the Ohio Constitution required that a criminal indictment must notify the accused of "the essential facts constituting the offense[,]" which in a drug case includes "the type controlled substance involved." *Id.* at 478-479. Thus, the Court in *Headley* found that the indictment's failure to name the drug involved in the appellant's trafficking charge was fatal to the state's case and affirmed the court of appeals reversal of appellant's conviction.

## B. Analysis

{¶36} The holding in *Headley* that the indictment was improper was predicated on the indictment's failure to name *any* controlled substance. The instant case is distinguishable from *Headley* because the indictment charged Adams with possessing both acetyl fentanyl and fentanyl.

{¶37} However, the parties agree that at the time of Adams' arrest, acetyl fentanyl was not a controlled substance. *See* R.C. 3719.41 Schedule I, Schedule II (B)(9). Therefore, as charged in the original indictment, and after the amendment dismissing acetyl fentanyl, the state charged Adams with possession of only one controlled substance, fentanyl. Thus, the amendment "[did] not

charge a new or different offense, nor * * * change the substance of the offense.' " *State v. Evans*, 4th Dist. Scioto No. 08CA3268, 2010-Ohio-2554, ¶ 35. Adams knew that he was being charged with possession of fentanyl before and after the amendment, which is the purpose of having to name the controlled substance in the indictment.

**{¶38}** Dismissing the alleged possession of acetyl fentanyl did not change an essential element of the offense. Accordingly, we find that the trial court did not abuse its discretion in permitting the state to amend the indictment herein by removing acetyl fentanyl from Adams's indictment. We, therefore, overrule Adams' second assignment of error.

### III. Third Assignment of Error

**{¶39}** In his third assignment of error Adams alleges that his conviction for possession of fentanyl is against the manifest weight of the evidence because the state cannot prove a chain of custody of the substance that Wedmore confiscated from him. The substance was initially delivered to the OSP lab in November of 2018, but subsequently transferred to the National Medical Lab ("NML") in Pennsylvania for testing. However, it was not tested at NML and it was eventually transported back to the OSP lab. There it eventually tested positive for fentanyl.

**{¶40}** Adams maintains that there is no evidence showing how the drugs were transported to NML. Nor was there evidence to show a chain of custody of the drugs for the time they were at NML, until they were transported back to the OSP lab in July 2019. Adams also questions why the substance was transported

from NML back to the OSP lab and kept there for 2 ½ years before it was tested. Adams claims that these deficiencies in the chain of custody of the drugs causes his conviction for possession of fentanyl to be against the weight of the evidence.

**{¶41}** In response, the state argues that it presented sufficient evidence to establish a chain of custody of the drugs confiscated from Adams.  The state claims that it is not required to "prove a perfect, unbroken chain of custody."  The state only needs to establish that "it is reasonably certain that substitution, alteration, or tampering [of the evidence] did not occur."  Breaks in the chain of custody do not go to the admission of the evidence, but to the weight afforded that evidence.

**{¶42}** Heather Sheskey, supervisor of the OSP lab, testified that the "lieutenant in charge" would have transported the drugs from the OSP lab to NML.  She stated that the OSP lab had contracts to outsource drug testing, including one with NML.  Sheskey testified that the OSP lab picked up the drugs from NML on July 31, 2019.  The only location where the drugs were not explicitly tracked was while they were at NML.  However, the drugs arrived to and from the NHL by way of the Ohio State Highway Patrol personnel.

A. Law

**{¶43}** "In a manifest-weight-of-the-evidence review, we 'will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.' "  (Brackets sic.)  *State v. Jenkins*, 4th Dist. Highland No. 12CA10, 2013-Ohio-595, ¶ 9, quoting *State v. Eskridge,* 38 Ohio

St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus.   In making such an analysis, we must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."  *State v. Wade*, 4th Dist. Ross No. 14CA3435, 2015-Ohio-997, ¶ 29, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). However, " 'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.' " *Jenkins* at ¶ 9, quoting *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶44} "The purpose of requiring a chain of custody is to ensure that the substance offered into evidence is in substantially the same condition as when seized."  *State v. Kiel*, 9th Dist. Wayne No. C.A. 1480, 1977 WL 199005, *3 (Sept. 8, 1977), citing *United States v. Santiago*, 534 F. 2d 768 (7th Cir. 1976). "Items such as blood samples or drugs generally require some showing of a chain of custody to establish identity because visual identification of the substance itself is difficult, if not impossible: the substance has no unique, readily identifiable characteristics."  *Id.*, citing *State v. Conley*, 32 Ohio App.2d 54, 59, 288 N.E.2d 296 (3rd Dist. 1971).  However, " '[a]ny breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility.' " *Jenkins*, 4th Dist. Highland No. 12CA10, 2013-Ohio-595, ¶ 10, quoting *State v. Smith,* 8th Dist. Cuyahoga No. 96348, 2011-Ohio-6466, ¶ 37.

## B. Analysis

**{¶45}** Sheskey, of the OSP lab, testified that the drugs recovered from Adams were received by the OSP lab on November 21, 2018. The sample was outsourced to NML because of a backlog at the OSP lab.

**{¶46}** Referencing an "internal chain of custody report[,]" Sheskey testified that the fentanyl recovered from Adams would have been flown or driven to NML on April 20, 2019 by whoever the lieutenant was overseeing the property section at the time. It was delivered to NML on April 22, 2019. Sheskey explained that it was unnecessary to have a witness from NML to come and testify about the fentanyl while it was at NML because the OSP lab has records of "who had the evidence when they had it, what was done with it."

**{¶47}** On July 31, 2019, NML returned the drugs to Ohio where it was stored in the Ohio State Patrol's long-term storage near the OSP lab. Sheskey testified that the drugs were transported from NML back to Ohio by the lieutenant who was overseeing the property section at that time. Sheskey testified the drugs were tested by OSP lab on February 17, 2022.

**{¶48}** We find that the state has presented substantial evidence from which a jury could infer that the state demonstrated a chain of custody of the drugs recovered from Adams in this case. Therefore, we overrule Adams' third assignment of error.

## CONCLUSION

{¶49} Having overruled Adams' three assignments of error, we affirm Adams' conviction for possession of fentanyl.

**JUDGMENT AFFIRMED.**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**