OPINION
{¶ 1} This is an appeal from a judgment of the court of common pleas construing the terms of a marital separation agreement.
 {¶ 2} Kimberly K. Emery and Gregory T. Emery filed a petition for dissolution of their marriage on May 19, 2003. Both parties were represented by counsel. A separation agreement signed by the parties was submitted with their petition.
 {¶ 3} A decree of dissolution adopting and incorporating the terms of the separation agreement was granted on June 25, 2003. Subsequently, on January 8, 2004, Kimberly[1] filed a motion to show cause alleging that Gregory is in contempt for failing to comply with the terms of the dissolution decree concerning disposition of the marital residence.
 {¶ 4} The separation agreement gave Gregory an option to keep the marital residence. In that event, he is obligated to pay Kimberly one-half the parties' net equity in the property. The net equity is the difference between an appraised fair market value and the outstanding mortgage obligations.
 {¶ 5} There were two mortgage obligations on the property. Gregory was able to refinance both through a new loan. He paid Kimberly the difference between the appraised value of the property and the first mortgage balance. However, Gregory paid Kimberly only one-half the difference between the appraised value and the second mortgage balance. In effect, that burdened Kimberly with one-half the pay-off of the second mortgage, and was the subject of her charges in contempt.
 {¶ 6} The matter came on for hearing on February 20, 2004. The court heard representations of counsel, and thereafter found in a written decision that Gregory is obligated by the separation agreement and decree to pay the entire second mortgage balance. However, the court declined to find Gregory in contempt, and instead ordered him to pay Kimberly the additional $4,331.96 due her by a specified date.
 {¶ 7} Gregory filed a timely notice of appeal. He presents a single assignment of error.
 {¶ 8} "The trial court erred in requiring the second petitioner-appellant to pay the first petitioner-appellee one half of the 5/3 equity line mortgage amount, when the clear meaning of the contract only required to pay to her one half of the equity associated therewith."
 {¶ 9} The motion before the court required it to construe the terms of the separation agreement incorporated into the decree. A separation agreement is a contract into which married persons are authorized by R.C 3103.05 to enter. When disputes arise concerning the rights and duties imposed by a written contract, the focus of the court's inquiry is the intention of the parties concerning the matter in dispute when they made their agreement. Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311.
 {¶ 10} In Peters v. Peters (Feb. 23, 2001), Montgomery App. No. 18445, we addressed our standard of review on claims that a trial court erred in construing and applying the terms of a marital separation agreement:
 {¶ 11} "When interpreting a provision of a separation agreement or divorce decree, courts have different views of the appellate court's standard of review. See e.g. In re Dissolution of Marriage of Seders
(1987), 42 Ohio App.3d 155, 156 (abuse of discretion); Brown v.Brown (1993), 90 Ohio App.3d 781, 784 (de novo). However, we have recently adopted a more thorough approach to reviewing a trial court's interpretive decision in Mattice, supra, at p. 3. If the decree is clear and unambiguous, its interpretation is a matter of law and will be reviewed de novo. On the other hand, if the document is ambiguous, there is a question of fact to be resolved by the trial court, and therefore our review is abuse of discretion. The threshold question of whether an ambiguity exists is a question of law that we review de novo. Id." (Id.
at p. 2).
 {¶ 12} The relevant portions of the separation agreement governing disposition of the marital residence read as follows:
 {¶ 13} "D. Real Estate.
 {¶ 14} "The parties own real estate at 9986 Grandview Drive, Bradford, Ohio. The parties shall have the property appraised by Rick Miller and should Husband desire to buy out Wife, Wife shall convey forthwith in partial discharge of her marital obligations, by sufficient deed, all of her right, title and interest in and to said parcel of real estate provided Husband pays to Wife one half of the equity associated therewith. Husband agrees to assume any and all indebtedness with regardto said marital residence and shall hold the Wife harmless therefrom.
Husband shall refinance the mortgage on said property within sixty (60) days from the date of filing the Decree of Dissolution. Should Husband fail to refinance said mortgage within sixty (60) days from the date of the decree, then the property shall be listed for sale and sold at the highest obtainable price. After deduction for real estate commissions, closing costs, taxes, insurance, and all mortgage indebtedness, the balance thereafter shall be equally divided between the parties with thepayment of the Equity Flexline coming out of Husband's share.
 {¶ 15} * * *
 {¶ 16} "Parties Equity in Marital Residence. Upon the closing of the sale of the Marital Residence, the gross proceeds of sale shall be applied as follows: First, the mortgage, accrued real estate taxes, Realtor's commission, other liens of record, inspection fees, agreed upon repairs or improvements, and other normal customary costs of sale shall be paid. Of the remaining amount ("net proceeds"), the parties shall equally divide the remaining proceeds. The Equity Flexline shall be paidsolely from the funds received by Husband."
 {¶ 17} * * *
 {¶ 18} "ARTICLE III: Debts
 {¶ 19} "Except as expressly provided to the contrary in this Decree, each Party shall pay and hold harmless and indemnify the other party from all debts, obligations and/or claims incurred in that Party's name prior to the date of this Agreement. Except as expressly provided to the contrary in this Decree, each Party shall pay and hold the other Party harmless from all debts, liabilities and obligations incurred by him or her from the effective date of this Agreement. Neither Party shall hereafter incur any debt or obligation upon the credit of the other, and each Party shall indemnify the other and hold the other harmless from any debts or obligations so incurred.
 {¶ 20} "Wife shall pay, indemnify and hold Husband harmless from the following debts and obligations: a) Visa credit card debt; b) CitiFinancial furniture bill; c) Attorney fees owed to Todd D. Severt.
 {¶ 21} * * *
 {¶ 22} "Husband shall pay, indemnify and hold Wife harmless from the following debts and obligations: a) Equity Flexline; b) Husband shall pay to Wife $2,000 for the CitiFinancial debt for the big screen television, or shall cause the same to be transferred to an account in his name only and shall hold Wife harmless therefrom." (Emphasis supplied).
 {¶ 23} The "Equity Flexline" obligation is the second mortgage. The first paragraph of Section D. of the separation agreement, quoted above, allows Gregory "to buy out" Kimberly, who is then obligated to convey to him all her "right, title and interest" in the property. In exchange, Gregory "agrees to assume any and all indebtedness with regard to said marital residence and shall hold (Kimberly) harmless therefrom." The Equity Flexline obligation is one such debt.
 {¶ 24} The first paragraph further provides for an alternative "sale" of the property to a third party. In that event, Gregory is obligated to pay the entire Equity Flexline obligation from his share of the net proceeds. The requirement is repeated in the paragraph captioned "Parties' Equity in Marital Residence."
 {¶ 25} Article III of the separation agreement, captioned "Debts," clearly requires Gregory to pay and hold Kimberly harmless from the Equity Flexline debt, irrespective of whether the marital residence is disposed of through Gregory's "buy out" of Kimberly's interest in the marital residence or its "sale" to a third party.
 {¶ 26} Gregory argues on appeal that he is obligated to pay only one-half the Equity Flexline balance in the event of a buy-out, because in that event Kimberly is entitled to one-half the net equity. But, net equity is determined after all applicable debts are paid, and among those is the Equity Flexline obligation chargeable to Gregory. He also seems to suggest that because he is obligated to pay the entire Equity Flexline obligation in the event of a "sale" to a third party, some different arrangement applies to his "buy-out" of Kimberly. We see no support for that contention.
 {¶ 27} While the separation agreement's clarity might be improved by a better segregation of these terms and conditions, the rights and duties they impose are sufficiently clear and unambiguous to allow a court to construe them. Our review of them is therefore de novo. Peters. On that review, we find no error in the trial court's decision.
 {¶ 28} The assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, P.J. and Young, J., concur.
[1] For clarity and convenience, the parties are identified by their first names.