[Cite as *Schneider v. Schneider*, 2020-Ohio-4326.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| BERNARD A. SCHNEIDER | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28675 |
| | : | |
| v. | : | Trial Court Case No. 1991-DM-43 |
| | : | |
| MARY L. SCHNEIDER | : | (Appeal from Common Pleas Court - |
| | : | Domestic Relations Division) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 4th day of September, 2020.

. . . . . . . . . .

ROBERT L. MUES, Atty. Reg. No. 0017449, 1105 Wilmington Avenue, Dayton, Ohio 45420
        Attorney for Plaintiff-Appellant

DEAN E. HINES, 5335 Far Hills Avenue, Suite 313, Dayton, Ohio 45429
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1} Bernard A. Schneider appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which found him in contempt for failing to pay his former wife Mary L. Schneider after his retirement from federal government service in 2002 as required by the separation agreement incorporated into their decree of dissolution. The judgment also ordered Bernard to pay the unpaid amounts and Mary's attorney fees. . Finding no error in the trial court's judgment, we affirm.

## I. Factual and Procedural Background

{¶ 2} The parties were married in May 1966, and their marriage was dissolved in February 1991, almost 25 years later. The decree of dissolution incorporated their separation agreement, which was prepared by Bernard without the help of an attorney. Paragraph 12 of the agreement concerned Bernard's pension:

Pensions. At the present time, the Husband is beneficial owner of vested, non-contingent pension rights in the Civil Service Retirement System (hereafter referred to as "Plan"). At this time, the Husband is entitled to full benefits of this plan after completing thirty (30) years of full-time employment and is at least fifty-five (55) years of age. At this time, Husband would receive a reduced amount of annuity from this plan if the conditions for years of service and age are not fully met, due to conditions such as layoff, sickness, or premature termination of employment. Details of the plan are available for inspection.

Upon Husband's retirement from federal government service and receipt of

full benefits from the Plan, the Husband shall cease payment of child support and alimony payments under the terms of this Agreement, and shall pay to Wife a monthly sum Sufficient to augment Wife's gross income from all sources to attain a total of $3,600.00 per month; however, Husband's payment shall not exceed $2,000.00 per month. * * * First payment shall occur upon Husband's receipt of first monthly annuity payment from the Plan.

{¶ 3} At the time of the dissolution in 1991, Bernard worked as a federal government employee at Wright Patterson Air Force Base (WPAFB). In 2002, he retired from WPAFB and began receiving full pension benefits. He continued to work, though, but as a self-employed consultant under an independent-consulting agreement with a Florida-based defense contractor, doing the same work he had done at WPAFB. In 2017, Bernard stopped working and fully retired.

{¶ 4} After their dissolution, the parties had little contact with each other. In 2006, Mary began making plans for her own retirement, which included figuring out what her income would be. She had an attorney send a letter to Bernard reminding him of his pension obligation set forth in paragraph 12 of the separation agreement and asking him whether he was retired and, if not, when he planned to retire. Bernard responded that he was still working and had no plans to retire. In 2010, Mary was having trouble making ends meet. She executed a $50,000 promissory note with her daughter and son-in-law under which they would give her up to $500 per month and she would pay them back with interest. The note was secured by a real-estate mortgage on Mary's home.

{¶ 5} Bernard never sent Mary any money. In July 2018, after she learned that he

was no longer working, Mary filed a motion for a finding of contempt, claiming that Bernard had retired from federal government service in 2002 but had not paid her the pension benefits he owed under paragraph 12 of their separation agreement. In March 2019, a hearing was held before a magistrate. Afterward, the magistrate issued a decision finding Bernard in contempt and also calculating the amount that he owed her. The magistrate sentenced Bernard to 30 days in jail, but suspended the sentence on the condition that he pay everything he owed, and allowed Bernard to purge his contempt by paying Mary a certain amount to show his good faith.

{¶ 6} Bernard filed several objections to the magistrate's decision with the trial court. On December 20, 2019, the court overruled them all. The court determined that Bernard was in contempt for failing to pay Mary beginning in 2002, when, the court found, he retired from federal government service and began collecting his full pension benefits. The court pointed out that Bernard had not even begun paying her in 2017, when he admitted his obligation was triggered. The court determined that Bernard owed Mary $349,479.87, for the period from 2002 to December 31, 2018, and owed her $2,000 for each month in 2019; it also determined that, going forward, he must pay Mary whatever amount was necessary to make her monthly income $3,600. In calculating her monthly income, the court excluded the payments to Mary under the promissory note, finding that they were in the nature of a loan secured by a mortgage on her home. The court also determined that Mary was entitled to payment of her attorney fees. The trial court sentenced Bernard to 30 days in jail but suspended the sentence on the condition that, by April 30, 2020, he pay Mary what he owed her through December 31, 2019. The court said that Bernard could purge his contempt by paying Mary $100,000 by March 1, 2020,

as a good-faith effort to discharge his debt. The court noted that Bernard had been less than forthcoming with Mary and that he had failed to pay her anything even after he stopped working entirely in 2017.

{¶ 7} Bernard appeals.

## II. Analysis

{¶ 8} Bernard assigns four errors to the trial court.

### A. Bernard's "retirement from federal government service"

{¶ 9} The first assignment of error alleges:

THE TRIAL COURT ERRED IN FINDING THAT MR. SCHNEIDER RETIRED IN MARCH 2002 PER THE LANGUAGE OF THE PARTIES SEPARATION AGREEMENT.

{¶ 10} The pertinent sentence in paragraph 12 of the separation agreement provides:

Upon Husband's *retirement from federal government service* and receipt of full benefits from the Plan, the Husband shall cease payment of child support and alimony payments under the terms of this Agreement, and shall pay to Wife a monthly sum * * *[.]

(Emphasis added.) There is no dispute that Bernard began receiving full pension benefits in 2002, when he left WPAFB. The question is whether at that time Bernard "retire[d] from federal government service." Bernard argues that he did not retire because he continued doing the exact same work for the federal government that he had been doing. The trial court found this irrelevant. What mattered was that he ceased being an employee of the federal government, not that he decided to continue working for himself.

{¶ 11} "A separation agreement is a contract and, as such, is subject to the same rules of construction that apply to other contracts." *Troha v. Troha*, 105 Ohio App.3d 327, 332, 663 N.E.2d 1319 (2d Dist.1995). " 'If the decree is clear and unambiguous, its interpretation is a matter of law and will be reviewed de novo.' " *Emery v. Emery*, 2d Dist. Darke No. 04CA1639, 2005-Ohio-207, ¶ 11, quoting *Peters v. Peters*, 2d Dist. Montgomery No. 18445, 2001 WL 173214, *2 (Feb. 23, 2001).

{¶ 12} The conditions precedent to Bernard's paragraph 12 obligation were unambiguous. The phrase "federal government service" plainly referred to the federal civil service, the civilian workforce of the federal government. There is no doubt that Bernard retired from the federal civil service in 2002. That was when he stopped working for the federal government and started receiving his pension benefits. That he then chose to keep working outside the federal civil service had no bearing on his paragraph 12 obligation. No reasonable person would conclude that one who is self-employed and does contract work for the government is in "federal government service." The trial court correctly determined that Bernard "retire[d] from federal government service" in 2002, triggering his obligation to pay Mary.

{¶ 13} The first assignment of error is overruled.

### B. The calculation of Mary's "gross income"

{¶ 14} The second assignment of error alleges:

THE TRIAL COURT ERRED IN FAILING TO INCLUDE INCOME FROM ALL APPELLEE'S SOURCES WHEN DETERMINING HER TOTAL INCOME FOR PURPOSES OF SPOUSAL SUPPORT.

{¶ 15} Paragraph 12 stated that Bernard "shall pay to Wife a monthly sum

Sufficient to augment Wife's *gross income from all sources* to attain a total of $3,600.00 per month; however, Husband's payment shall not exceed $2,000.00 per month." (Emphasis added.) These payments to Mary were in the nature of spousal support, with the apparent goal of giving her a monthly income of at least $3,600. The trial court determined that the money that Mary received under the promissory note was not income to her and should not be used to calculate her gross income, because the payments were in the nature of a loan secured by a mortgage on Mary's home. Bernard basically argues that "income from all sources" means all the money that Mary receives.

{¶ 16} The separation agreement did not define "gross income" or "income." For individuals, "gross income" is generally understood to be the sum of all wages, salaries, profits, interest payments, rents, and other forms of earnings, before any deductions or taxes. *See Black's Law Dictionary*, Income (11th Ed.2019) (defining "gross income" as "[t]otal income from all sources before deductions, exemptions, or other tax reductions"). For individuals, the term is probably most commonly used in the context of income tax. Indeed, the language in paragraph 12 echoes the definition of "gross income" found in the Internal Revenue Code, which provides in part that "gross income means all income from whatever source derived." 26 U.S.C. 61(a).

{¶ 17} Income, for tax purposes, is generally understood as an " 'accession[ ] to wealth.' " *Milenbach v. C.I.R.*, 106 T.C. 184, 195 (1996), *aff'd in part, rev'd in part*, 318 F.3d 924 (9th Cir.2003), quoting *C.I.R. v. Glenshaw Glass Co.,* 348 U.S. 426, 431, 75 S.Ct. 473, 99 L.Ed. 483 (1955). Loan proceeds do not actually increase one's wealth, because "the receipt of the loan is offset by the obligation to repay the loan." *Milenbach*, 318 F.3d at 930, citing *C.I.R. v. Tufts*, 461 U.S. 300, 307, 103 S.Ct. 1826, 75 L.Ed.2d 863

(1983). Thus, for tax purposes, "loan proceeds do not constitute income to the borrower." 1 *Mertens Law of Federal Income Taxation*, Section 5:13 (July 2020 Update). A reverse mortgage is a special type of loan that allows a homeowner to convert a portion of the equity in the home into cash, so "reverse mortgages are considered loan advances and not income." 4 Gates, *Internal Revenue Manual—Abridged & Annotated*, Section 5.15.1.31 (June 2020).

{¶ 18} The reverse-mortgage payments that Mary received did not increase her wealth. That money was an asset that she already owned: the equity in her home. To include these payments in her gross income would have been at odds with the goal of ensuring that she had an "ascension to wealth" of $3,600 per month and would have been fundamentally unfair. There is no evidence that the parties intended this unfair result.

{¶ 19} The second assignment of error is overruled.

### C. The contempt finding

{¶ 20} The third assignment of error alleges:

THE TRIAL COURT ERRED IN FINDING APPELLANT IN CONTEMPT OF COURT AS HE WAS, AT ALL TIMES, IN COMPLIANCE WITH THE COURT'S ORDER.

{¶ 21} A person may be found in contempt of court for "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court[.]" R.C. 2705.02(A). "We review the trial court's decision whether to find a party in contempt under an abuse-of-discretion standard." (Citation omitted.) *Abrams v. Abrams*, 2017-Ohio-4319, 92 N.E.3d 368, ¶ 19 (2d Dist.).

{¶ 22} The trial court found Bernard in contempt for his failure to comply with the

court's order that he begin paying Mary upon his retirement and receipt of full pension benefits. We have already concluded that Bernard's obligation to pay Mary was triggered in 2002. Not only did Bernard ignore his obligation in 2002, he ignored it even after he stopped working in 2017, when he himself admits it was triggered. We cannot say that the trial court abused its discretion by finding Bernard in contempt.

{¶ 23} The third assignment of error is overruled.

### D. The award of attorney's fees

{¶ 24} The fourth assignment of error alleges:

THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING APPELLEE ATTORNEY FEES IN FURTHERANCE OF THE CONTEMPT ACTION AS APPELLANT WAS IN COMPLIANCE WITH THE COURT'S ORDER AT ALL TIMES.

{¶ 25} The trial court ordered Bernard to pay Mary's attorney fees based on paragraph 27 of their separation agreement, which provided:

Enforcement Expenses. If either Husband or Wife defaults in the performance of any of the terms, provisions or obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate the performance of any provisions of this Agreement, then the party found to be in default shall pay all expenses, including reasonable attorney fees, incurred in connection with such enforcement proceedings.

{¶ 26} Bernard plainly defaulted in his performance of his obligation to pay Mary under the separation agreement. Mary had no choice but to institute contempt proceedings against him. The trial court did not abuse its discretion by awarding her

attorney fees.

{¶ 27} The fourth assignment of error is overruled.

## III. Conclusion

{¶ 28} We have overruled all of the assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies sent to:

Robert L. Mues
Dean E. Hines
Hon. Timothy D. Wood