[Cite as *Weber v. Weber*, 2026-Ohio-674.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

YALONDA FAYE WEBER    :
                      :    C.A. No. 30629
    Appellant         :
                      :    Trial Court Case No. 2025 DM 00215
v.                    :
                      :    (Appeal from Common Pleas Court-
DAVID LEE WEBER II    :    Domestic Relations)
                      :
    Appellee          :    **FINAL JUDGMENT ENTRY &**
                      :    **OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on February 27, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

ANDREW B. STEWART, Attorney for Appellant
DAVID L. WEBER II, Appellee, Pro Se (Deceased)

HANSEMAN, J.

**{¶ 1}** In this case, Appellant, Yalonda Weber, appeals from a judgment denying her Civ.R. 60(B)(4) motion for relief from judgment. According to Yalonda, the trial court abused its discretion in refusing to grant the motion without performing any analysis. Appellee, David Weber II, has been deceased since before the motion for relief was filed, and no brief representing his interests has been filed. After considering the record and applicable law, we find no abuse of discretion by the trial court. Accordingly, the judgment is affirmed.

I. Facts and Course of Proceedings

**{¶ 2}** On May 20, 2025, the parties filed a petition for dissolution in the trial court and stated they had signed a separation agreement ("Agreement") providing for the disposition of property, debts, support, and all other issues between them. The court scheduled a final hearing on the dissolution for July 2, 2025. During the final hearing, the court questioned the parties about the Agreement and their intentions. At that time, the Agreement had already been signed, and Yalonda's attorney had prepared a proposed decree. The attorney indicated, though, that he would have to add a change to the decree and that both parties had consented to the change. The magistrate gave the attorney 14 days to submit the decree. Transcript of Final Hearing (July 2, 2025), 7-8. David was not represented by an attorney in the action.

2

{¶ 3} The final decree, which included the Agreement, was filed by the clerk at around 1:59 p.m. on July 18, 2025. However, David had died earlier the same day at 8:41 a.m.[1] On August 22, 2025, Yalonda's attorney filed a suggestion of death with the court as well as a motion for relief from judgment under Civ.R. 60(B)(4). Attached to the motion were the death certificate, a special warranty deed to the parties' house, and Yalonda's affidavit. The trial court then filed an entry and order denying the motion. *See* Final Order (Sept. 2, 2025). This timely appeal followed.

## II. Relief Under Civ.R. 60(B)

{¶ 4} Yalonda's assignment of error states as follows:

THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO GRANT APPELLANT RELIEF FROM JUDGMENT PURSUANT TO CIV. R. 60(B)(4) BECAUSE, DUE TO APPELLEE'S UNEXPECTED DEATH PRIOR TO FILING OF THE FINAL DECREE, THE TERMS OF THE FINAL DECREE ARE NOW UNFAIR AND UNDULY BURDENSOME TO APPELLANT AND HER FAMILY.

{¶ 5} Yalonda makes several arguments under this assignment of error. Before addressing them, we outline the standards relevant to relief under Civ.R 60(B).

### A. Relevant Standards

---

[1] According to the motion for relief from judgment, Yalonda's attorney electronically submitted a signed decree to the court, which the court accepted on July 15, 2025. Motion for Relief from Judgment, p. 1. This is consistent with the court's July 17, 2025 order, which ordered the filing of a qualified domestic relations order ("QDRO"). The July 17 order indicated that a final judgment and decree had been filed in the case and ordered David to file a QDRO with the court and forward it to the plan administrator within 90 days. Although the final judgment and decree had been filed, it was not time-stamped until July 18. The suggestion of death filed on August 22, 2025, indicated that Yalonda's attorney was notified of the death around July 21, 2025.

{¶ 6} Civ.R. 60 provides in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: . . . (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." Under this part of the rule, the motion must be made within a reasonable time.

{¶ 7} "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time . . . ." *GTE Automatic Elec., Inc. v. ARC Industries*, *Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. Such motions are reviewed for abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987). *Accord Chapman v. Chapman*, 2006-Ohio-2328, ¶ 12 (2d Dist.). An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp*., 50 Ohio St.3d 157, 161 (1990). Decisions are unreasonable if they are not supported by a sound reasoning process. *Id*.

{¶ 8} In this instance, the key words in Civ.R. 60(B)(4) are "no longer," because they refer to "the change in condition that is required to make continued enforcement of the judgment inequitable." *Crouser v. Crouser*, 39 Ohio St.3d 177, 180 (1988), citing *Wurzelbacher v. Kroeger*, 40 Ohio St.2d 90, 92 (1974). This provision "was designed to

4

provide relief when those changed circumstances were not foreseeable, and not within the control of the parties." *Id*. Thus, the rule was intended to relive parties from judgments that "will clearly result in an inequitable burden" to them due to "unforeseen circumstances, and for which inequity there exists no other means of review." *Id*.

B. Discussion

{¶ 9} Yalonda's motion did not ask the court to modify certain provisions in the Agreement; instead, she asked that the decree itself be vacated. In the motion, Yalonda mentioned the parties' home, which was titled in both their names, as well as money contained in two accounts: Yalonda's Ohio Deferred Compensation Account and her 457 Retirement Plan with Voya Financial. The amounts in these accounts as of June 30, 2025, were to be transferred to David, and the proceeds of the sale of the home were to be divided equally between the parties.

{¶ 10} The main focus of Yalonda's motion was the house. She argued that if David died intestate, the house proceeds would have to be administered in the probate court, that no such administration had begun, and that she would not be able to initiate one because she had waived such rights in the Agreement. According to Yalonda, this process would cause unnecessary burden and expense for the family, would cause the children to have to move from their home (due to the requirement in the Agreement and decree that the house be sold), and would be inequitable. Yalonda further asserted that David's death was unforeseen.

{¶ 11} In its decision, which was admittedly sparse, the trial court denied the motion. After reciting a few preliminary facts, the trial court stated: "While the circumstances add a layer of complexity involving the Probate Court, this Court originally adopted an agreement that the parties developed. Therefore, the Court denies Yalonda's motion." Final Order, p. 1.

5

**{¶ 12}** The Agreement, together with the minor amendments the parties had agreed upon, was approved and incorporated into the final judgment. *See* Final Judgment and Decree of Dissolution of Marriage (July 18, 2025) ("Judgment"), p. 6. Both parties signed the Agreement on May 18, 2025, before the dissolution action was filed. Under the Agreement, Yalonda agreed to pay David $3,600 in spousal support with monthly payments of $100 each that would cease upon his death. Agreement, p. 2. Yalonda also agreed to pay David 100% of two of her retirement accounts. She retained complete ownership of her Ohio Public Employees' Retirement System account.

**{¶ 13}** Regarding the parties' marital property, Yalonda was permitted to live in the house until it was sold. No time limit for the sale was set. Until the house was sold, Yalonda was to pay the utilities and mortgage and was allowed to claim the interest payments and taxes as itemized deductions for purposes of federal, state, and local taxes. When the property was sold, the proceeds were to be divided equally. *Id*. at p. 3. An agreed amendment per the final judgment was that the first $2,000 in net proceeds would be given to David's father to repay a loan. Judgment, p. 4. The parties owed a separate debt to Trinity Debt Management, and they were required to deposit sufficient amounts from their sale proceeds in an account to pay the balance of the Trinity debt. Agreement, p. 4.

**{¶ 14}** The Agreement further stated:

> 17.2 <u>Mutual Releases</u>. To the fullest extent permitted by law, and except as otherwise permitted herein, each party relinquishes, waives, remises, and releases all rights and claims against the other party and his or her agents, attorneys and employees, except any cause of action for divorce or dissolution of marriage, now pending or hereafter brought, and each party hereby relinquishes, waives, remises and releases to the other, his or her heirs,

6

personal representatives and assigns, all rights of maintenance, alimony, spousal support, inheritance, descent and distribution, rights of survivorship, rights as a beneficiary of any life insurance, retirement or death benefits of any kind, homestead, dower, community property and all other rights, titles, claims, interests and estates as Husband and Wife, widow or widower, whether existing by reason of the marital relation between the parties or otherwise, including all rights, title, claim or interest which he or she otherwise has or might have or be entitled to claim in, to, or against the property, assets, and estate of the other, whether real, personal or mixed, whether marital or non-martial, whether community or separate, whether now owned or hereafter in any manner acquired by the other party, whether in possession or in expectancy and whether vested or contingent. Neither party, nor their respective heirs, personal representatives and assigns shall at any time hereafter sue the other party or his or her estate, heirs, personal representatives, grantees, devisees or assigns, agents or employees for the purpose of claiming or enforcing any rights which are released, waived, or relinquished under this Agreement. In the event any such suit shall be commenced, this release, when pleaded shall be and [will] constitute a complete defense thereto. Each party further agrees to execute, acknowledge and deliver at the request of the other party, or his or her heirs, personal representatives, grantees, devisees, or assigns, all documents or instruments reasonably required to effect or evidence this release, waiver, or relinquishment of such rights; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party

7

to the other of the obligation on the part of the other to comply with the express provisions of this Agreement.

(Parenthetical material added.) Agreement, p. 10-11.

{¶ 15} In addition, under the Agreement, each party waived the right to act in a fiduciary capacity with respect to the other party's estate, and each party released all rights of inheritance or inheritance by intestate succession, the right to act as an administrator or executor of the other's estate, and so forth. *Id*. at p. 11. The Agreement further provided: "Unless agreed to by both parties in writing, this Agreement shall not be subject to modification or amendment unless specifically permitted by the express provisions hereof and except as to provisions relating to the custody, parenting time, support and education of any minor child of the parties." *Id*. at p. 12.

{¶ 16} Finally, the Agreement stated:

g. This Agreement shall become effective and binding upon the parties immediately upon its execution by the parties. In conjunction with the entry of a Decree of Divorce, a Decree of Dissolution or a Decree of Legal Separation, the parties, or either of them, shall submit this Agreement, together with any supplemental agreement between the parties, to the Court for its approval, and if approved, the Agreement is to be incorporated in the decree and made a part thereof.

Agreement, p. 12.

{¶ 17} In arguing that the trial court abused its discretion, Yalonda first notes that because the dissolution decree operates prospectively by requiring the parties to sell real estate, pay debts, and take actions concerning their children, it was premised on both parties surviving the action. However, this is true of judgments in general. Most require parties to

8

take actions after a judgment is rendered. Yalonda further argues that the change in the situation forces undue burden on herself and her children, which can be alleviated by vacating the decree. In this regard, Yalonda submits that she and her children should not be burdened by having to sell the family home and possibly relocate to another school district. Appellant's Brief, p. 15. However, Yalonda had already agreed to sell the house as part of the Agreement; nothing has changed in that regard.

{¶ 18} Yalonda further contends the trial court's decision was unreasonable because the court mentioned only probate court complexities, did not consider any laws or legal principles, and appeared to rely (without saying so) on the decision in *Knapp v. Knapp*, 24 Ohio St.3d 141 (1986). Yalonda maintains that *Knapp* differs from the situation before us because the party seeking relief from alimony payments in *Knapp* had the ability to include terms for modifying alimony if his financial situation changed. However, he chose not to do so. Appellant's Brief, p. 12-13. According to Yalonda, she had no opportunity to control or foresee David's death, and she "is not trying to repudiate an unsavory result she could have avoided." *Id*. at p. 13.

{¶ 19} Yalonda is correct in stating that *Knapp* involved a husband who agreed to pay alimony in a dissolution agreement and then tried to obtain relief under Civ.R. 60(B)(4) when his financial situation changed. The agreement there was similar to the one here in that it did not allow modification or waiver of provisions unless the parties agreed in writing. *Id*. at 142. In assessing the situation, the Supreme Court of Ohio began by noting that "[i]n Ohio, dissolution is a form of no-fault divorce where the court can terminate a marriage pursuant to a mutual request of the parties. In fact, a simple reading of the Revised Code reveals that mutual consent is the cornerstone of our dissolution law." *Id*. at 144. The court then stressed

that while R.C. 3105.65(B) had originally allowed courts to modify terms like custody and periodic alimony, the legislature had eliminated the ability to modify alimony in 1975. *Id.*

{¶ 20} The court further noted that Civ.R. 60(B) balanced the competing concepts of perfection and finality (the latter of which had always been more favored) by providing "broad, but not unlimited authority to set aside judgments." *Id.* at 145. However, the court also found that Civ.R. 60(B)(4) did not apply to the movant's requested relief; instead, this part of the rule was intended to allow relief where litigants were "prospectively subjected to circumstances which they had no opportunity to foresee or control." *Id.* at 146. As noted, Yalonda contends that this is the case here because she could not have foreseen that David would die. We disagree. In fact, the Agreement included several provisions related to that possibility.

{¶ 21} As noted, the parties agreed that spousal support for David would cease if he died. Since support was to be paid for only for 36 months, Yalonda clearly anticipated or could have anticipated that David might die within that period of time. In addition, the Agreement had extensive provisions relating to what might occur if one of the parties died, including the release of claims against each other's estate, the waiver of ability to participate as executor or administrator, and so forth. Furthermore, although the circumstances differ here, the court's concern in *Knapp* was with the fact that the husband "made a voluntary, deliberate choice to enter into the settlement agreement," made a voluntary, deliberate choice to petition the court and request that the agreement be incorporated into a dissolution decree," and "had an opportunity to control the terms of his agreement and his dissolution decree." *Knapp*, 24 Ohio St.3d at 145, 146. The court, therefore, held: "The '* * * it is no longer equitable * * * clause' of Civ.R.60(B)(4) will not relieve a litigant from the

consequences of his voluntary, deliberate choice to enter into a separation agreement in a dissolution of marriage proceeding." *Id*. at paragraph two of the syllabus.

{¶ 22} Subsequently, in a dissolution case involving an attempt to set aside a property division, the Supreme Court of Ohio held that "[w]here the parties to a dissolution have expressly agreed in a separation agreement that the agreement may be modified by court order, and the agreement has been incorporated into the decree, a trial court may, pursuant to its continuing jurisdiction to enforce the decree, grant relief from judgment under Civ.R. 60(B)(1), (2), or (3) as to the property division in the separation agreement, without vacating the decree of dissolution." *In re Whitman*, 81 Ohio St.3d 239 (1998), paragraph one of the syllabus. The court's decision was based on the theory that "if consent or mutuality did not exist when the parties entered into the separation agreement because of fraud or material mistake or misrepresentation, then there was no agreement upon which the dissolution decree could have been based. This lack of mutuality undermines the integrity of the dissolution proceeding and may constitute sufficient grounds to set aside the decree under Civ.R. 60(B)." *Id*. at 241-242 (citing cases). The court also concluded that if the parties had given the court the right to modify the agreement, there was no need to vacate the decree; the court, in its discretion, could elect to modify the part of the agreement affected by the conduct. *Id*. at 244-245.

{¶ 23} Notably, the court stressed that its holding was "limited to motions brought under Civ.R. 60(B)(1), (2), and (3)" and was consistent with the court's holding in *Knapp*, 24 Ohio St.3d 141, "which precluded a party from using the 'it is no longer equitable' clause of Civ.R. 60(B)(4) to modify a decree of dissolution that was entered into voluntarily." *Whitman* at 245. Unlike the parties in *Whitman*, Yalonda's and David's agreement did not give the trial court the right to modify their agreement; their own written agreement was the only way in

11

which it could be modified. Moreover, concerning the marital home, the Agreement provided that any controversy or claim relating to that matter would be referred to arbitration. Agreement, p. 5.

{¶ 24} In 2016, the Supreme Court of Ohio again considered the ability to modify a dissolution decree under Civ.R. 60(B)(4). *See Morris v. Morris*, 2016-Ohio-5002. This time, the issue was modification or vacation of a spousal support order under Civ.R. 60(B)(4) where the decree failed to reserve jurisdiction to modify the award. *Id*. at ¶ 1. In deciding the matter, the court outlined the history of the common law, statutes, and cases relating to both divorce and dissolution that had occurred since the 1802 Ohio Constitution, which lacked provisions for divorce or spousal support. *Id*. at ¶ 12-46. In this discussion, the court emphasized that Civ.R. 60, which was adopted in 1970, was a procedural rule. The court stressed that the legislative branch retained the right to establish substantive legislation, which the court's procedural rules could not abridge. *Id*. at ¶ 29-33 (citing cases).

{¶ 25} Following this discussion, the court found that under its precedent, substantive law, i.e., R.C. 3105.18(E), controlled whether trial courts have jurisdiction to modify spousal support awards in both divorce and dissolution decrees. *Morris* at ¶ 56. The court held that this statute had "established the limits of a trial court's jurisdiction to modify an award of spousal support. And a party's request for modification falls within those statutory limits only if the parties agree or the court orders that jurisdiction be reserved. In other words, the trial court must first determine whether the decree of divorce or dissolution contains a reservation of jurisdiction. If the trial court lacks jurisdiction to modify, then the inquiry of the court ends there." *Id.* at ¶ 57.

{¶ 26} The court then reiterated that trial courts lack jurisdiction to modify spousal support absent a reservation of jurisdiction. And again, consistent with *Knapp*, the court

indicated that even if jurisdiction for the court to modify has been reserved, "a party is limited to seeking relief from judgment under Civ.R. 60(B)(1), (2), or (3); a litigant may not seek relief from the decree under Civ.R. 60(B)(4) or (5)." *Morris* at ¶ 63, citing *Knapp*, 24 Ohio St.3d 141 at paragraph two of the syllabus, and *Whitman*, 81 Ohio St.3d at 245.

{¶ 27} Finally, in 2019, the Supreme Court of Ohio considered whether a trial court has authority under R.C. 3105.171(I) to modify a property division (pension benefits) where the properties did not agree to the modification. *Walsh v. Walsh*, 2019-Ohio-3723, ¶ 1. In *Walsh*, the parties had been married for 19 years but had separated after only six years. Their consent judgment in the divorce case provided that the wife would receive a share of the husband's military pension based on a marriage term of six years. However, under federal law, the miliary would not pay direct benefits unless: (1) a marriage lasted for at least 10 years; and (2) the military spouse had provided at least 10 years of service during that time. *Id*. at ¶ 2-8 (discussing the "10/10 rule, codified at 10 U.S.C. 1408(d)(2)").

{¶ 28} More than two years after the decree was filed, the wife filed a motion for relief from judgment under Civ.R. 60(B)(4) and (5). After holding a hearing, the trial court changed the divorce judgment to show a marriage duration of 10 years, with 15% of the military pension being paid to the ex-wife. The husband then appealed. When the case reached the Supreme Court of Ohio, it reversed the judgment, holding the trial court lacked jurisdiction to modify the marriage term that the divorce decree had stated. *Walsh* at ¶ 9-16. The court's first point was that "Civ.R. 60(B) is the only procedural vehicle that exists for modifying a final judgment in a civil case. Thus, even when a court retains continuing jurisdiction to modify a provision in a decree, a party must still meet the requirements of Civ.R. 60(B) before a court may exercise that authority." *Id*. at ¶ 18, citing *Whitman*, 81 Ohio St. 3d at 242.

**{¶ 29}** The court's second point was that in addition to the Civ.R. 60(B) requirements, statutory limitations restricted the trial court's authority. The court noted that R.C. 3105.171(I) prohibits modifications unless both parties expressly give written consent. *Walsh* at ¶ 19-20. Discussing *Morris*, the court again stressed that Civ.R. 60(B) is procedural and statutory limitations, which are substantive, control. *Id*. at ¶ 21-22, discussing *Morris*, 2016-Ohio-5002, at ¶ 1-2, 30, 32. In this regard, the court explained that "[t]hough *Morris* dealt with spousal support rather than a property distribution, the same principle applies: Civ.R. 60(B) cannot be used to alter the statutory requirements for the modification of a decree. Because R.C. 3105.171(I) does not permit modification absent the consent of both parties, Civ.R. 60(B) cannot provide a workaround." *Id.* at ¶ 53.

**{¶ 30}** Although *Walsh* involved a consent divorce judgment, the same rules apply to dissolutions. For example, R.C. 3105.65(B) states: "A decree of dissolution of marriage has the same effect upon the property rights of the parties, including rights of dower and inheritance, as a decree of divorce." Thus, besides the case law we have discussed, R.C. 3105.171(I) applies to this case as well. In addition, R.C. 3105.63(C)(2) provides: "If a petition for dissolution of marriage contains an authorization for the court to modify the division of property provided in the separation agreement, the modification shall be made with the express written consent or agreement of both spouses."

**{¶ 31}** In the case before us, the parties did not include any provisions allowing the court to modify the property division, nor did they consent to modification of the Agreement; in fact, modification was prohibited other than as to matters pertaining to the minor children, such as custody and parenting time. Therefore, under the prevailing authority, the trial court lacked authority to modify the decree.

**{¶ 32}** We also note that Yalonda has asked that the court vacate the entire decree. We have recognized a distinction between "vacating an entire dissolution decree" and "modifying the terms of a separation agreement contained within a decree" where the movant claims that "no valid separation agreement exists." *Quesinberry v. Quesinberry*, 2022-Ohio-635, ¶ 20 (2d Dist.). The basis for allowing Civ.R. 60(B) relief for vacation of the decree in this situation is that if ""[i]f consent or mutuality did not exist when the parties entered into the separation agreement because of fraud or material mistake or misrepresentation, then there was no agreement upon which the dissolution decree could have been based."" *Id*. at ¶ 21, quoting *Molnar-Satterfield v. Molnar*, 2021-Ohio-2698, ¶ 14 (2d Dist.), quoting *Whitman*, 81 Ohio St.3d at 241. In *Quesinberry*, we vacated the dissolution decree based on the parties' mutual mistake about a material term in the separation agreement. *Id*. at ¶ 35-47.

**{¶ 33}** The situation here is different. Yalonda's position is not that the parties made a mutual mistake or that any type of fraud or misrepresentation existed that would cause the Agreement to be invalid, and she did not bring her motion for relief from judgment on any of those bases. Instead, her motion was based on Civ.R. 60(B)(4), and under prevailing law, the ability to obtain relief is precluded. Accordingly, the trial court did not abuse its discretion in denying the motion.

**{¶ 34}** As a final note, during her statement of the case, Yalonda noted in passing that where a party dies in a divorce case after it has been presented but before a decree is journalized, the trial court has discretion whether to issue a nunc pro tunc order making the decree effective before death. Appellant's Brief, p. 2. Yalonda adds, without further argument or analysis, that the trial court entered the decree after David died and then denied her motion for relief from judgment. *Id*.

15

**{¶ 35}** The Supreme Court of Ohio has stated:

> R.C. 2311.21 states that "[u]nless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto, except actions for libel, slander, malicious prosecution, for a nuisance, or against a judge of a county court for misconduct in office, which shall abate by the death of either party." Although divorce actions are not specified in R.C. 2311.21 as actions requiring abatement upon death of one or both parties, this court has stated that "[e]ven in the absence of statute, it stands to reason that where one or both parties to a divorce action die before a final decree of divorce the action abates and there can be no revival [because] [c]ircumstances have accomplished the primary object sought."

*State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 99 (1996), quoting *Porter v. Lerch*, 129 Ohio St. 47, 56 (1934) (which had construed "the similarly worded General Code version of R.C. 2311.21").

**{¶ 36}** In *Litty*, the court further remarked that "[c]onversely, if a party in a divorce action dies following a decree determining property rights and granting a divorce but prior to the journalization of the decree, the action does not abate upon the party's death." *Id*., citing *Porter* at 56, and *Caprita v. Caprita*, 145 Ohio St. 5 (1945), paragraph three of the syllabus. In that situation, the court has the ability to journalize the decree by a nunc pro tunc entry. *Id.*

**{¶ 37}** As a preliminary point, Yalonda's comment about the trial court's actions is technically true, but the implication is not, i.e., that the trial court acted improperly by entering the decree after David died. The court was not informed of the death before the decree was filed, and Yalonda's attorney had actually submitted the decree before David's death, as

16

noted above. The order regarding the QDRO was also filed before David's death. Rather than promptly notifying the court so that it could enter a nunc pro tunc entry, Yalonda failed to file the suggestion of death until after the time for appeal had elapsed. When that time had elapsed, the judgment was final. *E.g., Deutsche Bank Natl. Tr. Co. v. Pandey*, 2010-Ohio-3746, ¶ 12 (10th Dist.). This does not mean that Yalonda was barred from filing a motion for relief from judgment, but, as we have said, relief was not authorized under Civ.R. 60(B)(4).

{¶ 38} Furthermore, even if the dissolution decree could be vacated, which it cannot, Yalonda had already entered into a contract that obliged her to do the things she was attempting to evade by filing a motion for relief from judgment. The parties entered into the Agreement before litigation began and did not include a requirement that it was only effective if the parties filed for divorce, dissolution, or legal separation. To the contrary, the Agreement was effective immediately, and it did not require a legal action to be filed, although it was contemplated. Furthermore, before David died, Yalonda had taken steps to follow through on the Agreement by filing the decree and obtaining an order from the court requiring David to file a QDRO.

{¶ 39} In situations where dissolutions have been dismissed and divorce actions are then filed, courts may enforce separation agreements that the parties signed in seeking a dissolution. *E.g., Johnson v. Johnson*, 1980 WL 352546, *4 (2d Dist. May 5, 1980), citing *Greiner v. Greiner*, 61 Ohio App.2d 88, 95 (8th Dist. 1979); *Carpenter v. Davison*, 2023-Ohio-2284, ¶ 24-26 (7th Dist.). In a recent case, the Supreme Court of Ohio considered its prior statement that "a separation agreement 'loses its nature as a contract the moment it is adopted by the court and incorporated into a decree of divorce.'" *State ex rel. Heyside v.*

17

*Calabrese*, 2023-Ohio-406, ¶ 10, quoting *Wolfe v. Wolfe*, 46 Ohio St.2d 399 (1976), paragraph four of the syllabus.

{¶ 40} In this regard, the court held:

*Wolfe* made that statement in a specific context: whether an alimony obligation set forth in a divorce decree was subject to future modification, and if so, under what circumstances. When *Wolfe* eschewed a contract theory of alimony, it did so to make the point that the issuing court had discretion to modify the terms—with respect to sustenance payments—in the interests of justice. The question presented in this case does not concern a prospective modification of the decree, but rather, it asks who has jurisdiction to enforce the decree. We see nothing in *Wolfe* to suggest that the domestic-relations division has exclusive subject-matter jurisdiction to enforce the parties' obligations in this case. That question was simply not before us in *Wolfe*.

*Heyside* at ¶ 17.

{¶ 41} The matter involved in *Heyside* was a breach of contract complaint seeking monetary damages for failure to pay amounts required by a separation agreement and divorce decree. *See State ex rel. Heyside v. Calabrese*, 2022-Ohio-1245, ¶ 2 (8th Dist.). After the common pleas court refused to grant the defendant's motion to dismiss, the defendant then filed a petition for a writ prohibiting the common pleas court from proceeding. *Id*. The court of appeals then dismissed the petition, and the defendant-petitioner appealed to the Supreme Court of Ohio, which affirmed the court of appeals' decision. *Heyside*, 2023-Ohio-406, at ¶ 1.

{¶ 42} Again, assuming for the sake of argument that the dissolution decree could be vacated, that would not mean Yalonda could avoid contractual obligations. The Agreement

the parties signed would still exist. The law is clear that "[a] separation agreement is a contract into which married persons are authorized by R.C 3103.05 to enter." *Emery v. Emery*, 2005-Ohio-207, ¶ 9 (2d Dist.). When the parties choose to separate, their separation agreement is enforceable by the common pleas court. *E.g., Seeley v. Seeley*, 1989 WL 84005, *1 (2d Dist. July 26, 1989), citing R.C. 3105.10. Even though David is deceased, his administrator or executor could sue to enforce the Agreement. If the minor children are the beneficiaries as David's next of kin, it would be inequitable to deprive them of property their father bargained for and for which they are the beneficiaries.

{¶ 43} Based on the preceding discussion, Yalonda's sole assignment of error is overruled.

### III. Conclusion

{¶ 44} Yalonda's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.